```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
```

ALEX FEINMAN,
    Plaintiff,

    v.                                     CIVIL ACTION NO.
                                                  03-12301-GAO

DOMINIC NICOLACI, MICHELINA ANDRADE,
CHRISTOPHER BATY, JAMES BURGESS,
ATTORNEY STEWART GRIMES,
CHIEF OF POLICE, New Bedford Police Department,
SHERIFF, Bristol County Sheriff's Department,
BONNIE DEMERS, ROSALIE HASSEY,
LFS, INC., CHUCK PRUNIER, FBI Special Agent,
DETECTIVE CHRISTOPHER RICHMOND, Acushnet Police Department,
STATE ATTORNEY CHRIS MARKEY,
ATTORNEY DAVID MADOFF, THOMAS BRUNELLE,
BAIL COMMISSIONERS, JOHN DOE (1) and (2),
CAROL VER CAMMEN, KENNETH VER CAMMEN,
LYDIA NICOLACI, SHAWN GORE,
LIEUTENANT HEBERT AND UNKNOWN OFFICERS -
New Bedford Police Department,
JUDGE DAVID TURCOTTE, NICOLE MENDONCA,
ROBERT QUINONES and STEPHANIE PALMER,
    Defendants.

**REPORT AND RECOMMENDATION RE:
DEFENDANT LIEUTENANT EUGENE HEBERT AND UNIDENTIFIED
NEW BEDFORD POLICE OFFICERS' MOTION FOR SUMMARY
JUDGMENT (DOCKET ENTRY # 111); DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
<u>(DOCKET ENTRY # 118)</u>**

**March 17, 2005**

**BOWLER, U.S.M.J.**

    Pending before this court are two motions for summary judgment in the above styled civil rights action. (Docket Entry ## 111 & 118). Having determined that a hearing is not necessary, the motions (Docket Entry ## 111 & 118) are ripe for review.

    In the first motion, defendant Lieutenant Eugene Hebert ("Lt. Hebert"), a lieutenant with the New Bedford Police Department, and defendants unidentified New Bedford police

officers ("unidentified New Bedford police officers"), seek summary judgment on all claims in the amended complaint against them arising under 42 U.S.C. § 1983 ("section 1983") and sections 11H and I of chapter 12 of the Massachusetts General Statutes, commonly known as the Massachusetts Civil Rights Act ("MCRA").  (Docket Entry # 111).  They submit that the amended complaint fails to set forth a constitutional violation or a conspiracy claim under section 1983 or a constitutional violation by threats, intimidation or coercion under the MCRA.

In the second motion, defendant Sheriff, Bristol County ("the Sheriff"),[1] asserts that he did not deny plaintiff Alex Feinman ("Feinman") proper medical care amounting to a violation of his constitutional rights under the Eighth or Fourteenth Amendments under section 1983 or under the MCRA and moves for summary judgment on all claims.[2]  (Docket Entry # 118).  The Sheriff contends that the section 1983 and MCRA individual and

---

[1] The docket sheet, as well as this court's prior recommendation, erroneously refers to this defendant as the Bristol County Sheriff's Department.  In fact, however, Feinman identifies this defendant as the "Sheriff, Bristol County" in both the original and amended complaints.  Likewise, Feinman served the summons and complaint upon the "Sheriff, Bristol County Sheriff's Office."  (Docket Entry # 16).  In lieu of answering the original complaint, the "Sheriff, Bristol County, Thomas Hodgson" filed a motion to dismiss.  (Docket Entry # 4).  After this court recommended denying the motion, "defendant, Sheriff, Bristol County" filed an answer to the amended complaint.  (Docket Entry # 105).  Hence, this defendant is properly identified as the Sheriff, Bristol County, as opposed to the Bristol County Sheriff's Department.

[2] Assuming arguendo that the amended complaint raises a claim against the Sheriff under the American Disabilities Act, the Sheriff's papers do not address this statute.

official capacity claims in the amended complaint are devoid of merit.[3] As to the latter, the Sheriff additionally asserts that Feinman fails to present evidence of a municipal policy or custom.[4] (Docket Entry # 118).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); Carroll v. Xerox Corporation, 294 F.3d 231, 236 (1st Cir. 2002) (quoting Rule 56(c)).  A "genuine" factual issue exists where "the evidence relevant to the issue, viewed in the light most flattering to the party opposing the motion, [is] sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side."  National Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995).  A "material" fact "means that a contested issue of fact has the potential to alter the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant."  Smith v. Morse & Company, Inc., 76 F.3d 413, 428 (1st Cir. 1996).

---

[3] The amended complaint is silent as to the capacity in which Feinman sues the Sheriff.  Mindful of Feinman's pro se status, this court construes the amended complaint as raising both theories of liability.

[4] Lt. Hebert and the unidentified New Bedford police officers proffer a similar argument in their motion.

Disputed facts and inferences therefrom are drawn in favor of the nonmoving party, Feinman. Mullin v. Raytheon Company, 164 F.3d 696, 698 (1st Cir. 1999); accord Barbour v. Dynamics Research Corporation, 63 F.3d 32, 36 (1st Cir. 1995). The plaintiff, however, "may not rest upon the mere allegations or denials of [his] pleading." Torres-Rosado v. Rotger-Sabat, 335 F.3d 1, 8 (1st Cir. 2003). Consequently, "[a]n unsworn assertion of fact in the complaint alone is not enough to create a material factual dispute." Torres-Rosado v. Rotger-Sabat, 335 F.3d at 8. In general, "the essential role of summary judgment is 'to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.'" Mullin v. Raytheon Company, 164 F.3d at 698.

I.  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOCKET ENTRY # 118)[5]

Feinman does not dispute that the claim[s] in the amended complaint against the Sheriff concern a purported denial of medical care. (Docket Entry # 123). The amended complaint alleges that while in the custody of the Bristol County Sheriff's Department Feinman was denied proper medical care in contravention of section 1983 and the American Disabilities Act.[6]

---

[5] Notwithstanding the plural reference to "Defendants," the motion is filed by "Defendant, Sheriff, Bristol County." (Docket Entry # 118).

[6] The caption of the amended complaint as well as the paragraph wherein Feinman addresses the claim against the Sheriff (Docket Entry # 103, ¶ 14) both refer to the American Disabilities Act.

4

(Docket Entry # 103, ¶ 14). The Sheriff's summary judgment motion (Docket Entry # 118) limits itself to addressing the civil rights claim for the alleged denial of medical care under section 1983 and the MCRA. Facts in the summary judgment record are as follows.

On October 24, 2003, an arrest warrant issued from the Acushnet County Police Department charging Feinman with credit card fraud. The charges stemmed from an incident occurring on April 9, 2003. (Docket Entry # 121, Ex. A).

On October 27, 2003, Feinman appeared before the New Bedford Division of the Massachusetts Superior Court Department (Bristol County) ("the trial court"). Feinman was unable to post bail set by the trial court in the amount of $10,000 cash or a $100,000 bond. Consequently, the trial court committed Feinman to the custody of the Bristol County House of Correction in North Dartmouth, Massachusetts. Feinman arrived at the institution at an undetermined time on October 27, 2003. (Docket Entry # 121, Ex. A & E).

At 5:00 p.m. on October 27, 2003, one or more staff members of Prison Health Services, Inc. evaluated Feinman. (Docket Entry # 121, Ex. C & D). Feinman was given 400 milligrams of Motrin for pain as well as two other medications in accordance with a detoxification protocol. (Docket Entry # 120, ¶ 5); LR. 56.1; Cochran v. Quest Software, Inc., 328 F.3d 1, 12 (1st Cir. 2003) (the plaintiff's failure to contest date in LR. 56.1 statement of material facts caused date to be admitted on summary judgment);

5

Stonkus v. City of Brockton School Department, 322 F.3d 97, 102 (1st Cir. 2003) (citing LR. 56.1 and deeming admitted the undisputed material facts that the plaintiff failed to controvert); see Kenda Corp., Inc. v. Pot O'Gold Money Leagues, 329 F.3d 216, 225 n. 7 (1st Cir. 2003) (citing principle that "'[p]ro se status does not insulate a party from complying with procedural and substantive law'").

At 10:45 a.m. on October 28, 2003, Feinman was again seen by staff at Prison Health Services, Inc. where he underwent a physical examination. (Docket Entry # 121, Ex. D). As a result of the examination, Feinman was given an additional 600 milligrams of Motrin and access to a bottom bunk bed due to his hip injury. (Docket Entry # 120, ¶ 6); LR. 56.1; Cochran v. Quest Software, Inc., 328 F.3d at 12; Stonkus v. City of Brockton School Department, 322 F.3d at 102; see Kenda Corp., Inc. v. Pot O'Gold Money Leagues, 329 F.3d at 225 n. 7. At an undetermined time later that day, Feinman made bail and was released from the custody of the Bristol County Sheriff's Department. (Docket Entry # 121, Ex. E).

## DISCUSSION

Section 1983 prescribes the deprivation of constitutional rights by state actors. Watterson v. Page, 987 F.2d 1, 7 (1st Cir. 1993) (section 1983 action requires the plaintiff to "show both the existence of a federal constitutional or statutory right, and some deprivation of that right as a result of

defendants' actions under color of state law"). Although the Sheriff is undoubtedly a state actor, the section 1983 claim falters for lack of a constitutional violation. It is axiomatic that a necessary element of recovery under section 1983 is the violation of a constitutional right. Gomez v. Rivera Rodriguez, 344 F.3d 103, 121 (1st Cir. 2003).

Feinman cannot sustain an Eighth Amendment violation because the protections of the Eighth Amendment against cruel and unusual punishment only attach after a prisoner's conviction. See Hasen v. La Jeunesse, 175 F.3d 68, 71 n.1 (1st Cir. 1999). Thus, claims of constitutional violations brought by pretrial detainees are more properly analyzed under the substantive component of the Due Process Clause of the Fourteenth Amendment. See O'Connor v. Huard, 117 F.3d 12, 15 (1st Cir. 1997); McNally v. Prison Health Services, Inc., 28 F.Supp.2d 671, 673 (D.Me. 1998); Ellis v. Meade, 887 F.Supp. 324, 329 (D.Me. 1995). Although "[p]retrial detainees are protected under the Fourteenth Amendment Due Process Clause rather than the Eighth Amendment, . . . the standard to be applied is the same as that used in Eighth Amendment cases." Burrell v. Hampshire County, 307 F.3d 1, 7 (1st Cir. 2002); see generally Hasenfus v. La Jeunesse, 175 F.3d at 72 (noting "basic due process constraint as against behavior so extreme as to 'shock the conscience'").

Eighth Amendment claims are analyzed under the twofold framework laid out in Farmer v. Brennan, 511 U.S. 825, 834 (1994). See Burrell v. Hampshire County, 307 F.3d at 7 (applying

this standard to pretrial detainee's Fourteenth Amendment due process claim). First, the deprivation of medical care must be "objectively, sufficiently serious." Farmer v. Brennan, 511 U.S. at 834; Burrell v. Hampshire County, 307 F.3d at 7. This court assumes arguendo the existence of such a condition.

"Second, the plaintiff must show that prison officials possessed a sufficiently culpable state of mind, namely one of deliberate indifference to an inmate's health." Burrell v. Hampshire County, 307 F.3d at 7. Deliberate indifference is more than mere negligence. Burrell v. Hampshire County, 307 F.3d at 7. Although more blameworthy than negligence, the standard "is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Calderon-Ortiz v. Laboy-Alvarado, 300 F.3d 60, 64 (1st Cir. 2002).

The Sheriff, however, did not disregard the risk to Feinman's health. See Calderon-Ortiz v. Laboy-Alvarado, 300 F.3d at 64 (under second element the plaintiff must show "(1) the defendant knew of (2) a substantial risk (3) of serious harm and (4) disregarded that risk"). To the contrary, during Feinman's brief incarceration at the Bristol County House of Correction he was seen twice by medical personnel, given a physical examination and given pain medication on two occasions. See Layne v. Vinzant, 657 F.2d 468, 471 (1st Cir. 1991) ("(w)here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant

to second guess medical judgments and to constitutionalize claims which sound in state tort law"); see, e.g., City of Revere v. Massachusetts General Hospital, 463 U.S. 239, 244-245 (1983) ("Revere fulfilled its constitutional obligation by seeing that Kivlin was taken promptly to a hospital that provided the treatment necessary for his injury").  Bristol County House of Correction officials responded reasonably to a risk that Feinman was experiencing pain by having him seen twice by medical staff and having him receive pain medication on two occasions.  See generally Burrell v. Hampshire County, 307 F.3d at 7 ("the officials responded reasonably to a known risk and so were not indifferent").  The fact that Feinman did not receive another prescribed medication for his hip disorder does not rise to deliberate indifference.  See, e.g., Mahan v. Plymouth County House of Corrections, 64 F.3d 14, 18 (1st Cir. 1995) (affirming directed verdict for alleged withholding of prescribed medication).  Inasmuch as Feinman received pain medication and medical attention, there is nothing in the record to show a trialworthy issue that the Sheriff acted with the requisite deliberate indifference.

Turning to the official capacity claim, a section 1983 "damages suit against an official in an official capacity is tantamount to a suit against the entity of which the official is an agent (the jail)." Burrell v. Hampshire County, 307 F.3d at 7; see Hafer v. Melo, 502 U.S. 21, 25 (1991) ("[b]ecause the real party in interest in an official-capacity suit is the

governmental entity and not the named official, 'the entity's "policy or custom" must have played a part in the violation of federal law'"). As was the case in <u>Burrell</u>, there is no evidence to support a claim that the Bristol County House of Correction followed "a policy or custom of deliberate indifference." <u>Burrell v. Hampshire County</u>, 307 F.3d at 7.

Accordingly, summary judgment on the section 1983 and the MCRA claims against the Sheriff in his individual and official capacities is appropriate.

II. <u>DEFENDANT LIEUTENANT EUGENE HEBERT AND UNIDENTIFIED NEW BEDFORD POLICE OFFICERS' MOTION FOR SUMMARY JUDGMENT (DOCKET ENTRY # 111)</u>

With respect to Lt. Hebert and the unidentified New Bedford police officers, the summary judgment record shows the following.

In the fall of 2003, Feinman telephoned the New Bedford Police Department a number of times and spoke with Lt. Hebert. Feinman complained that individuals were using his property without his permission. He also suggested that Lt. Hebert telephone FBI Special Agent Charles Prunier ("Prunier"), a former defendant in this case, because the FBI was investigating Feinman's former business, defendant LFS, Incorporated ("LFS"). LFS had a business operation center at 195 Riverside Avenue in New Bedford, Massachusetts, according to an October 27, 2003 no trespass order signed by defendant Attorney Stewart Grimes ("Attorney Grimes") as LFS' attorney. (Docket Entry # 113, Ex.

1; Docket Entry # 70, Ex. A).

The no trespass order addressed to Feinman and issued under section 120 of chapter 266 of the Massachusetts General Laws ("section 120"),[7] advised Feinman that LFS was in lawful control of the premises at 195 Riverside Avenue and that he was forbidden to enter or remain on the premises. A copy of the order was given to the New Bedford Police Department. (Docket Entry # 70, Ex. A).

On October 29, 2003, Feinman and another individual went to the New Bedford Police Department and spoke with a desk officer about the no trespass order. Feinman and the individual then went to 195 Riverside Avenue where Fienman had an office. One of the tenants in the building, Shawn Gore, notified the New Bedford Police Department that Feinman was trespassing on the property. The New Bedford Police Department then arrested Feinman for

---

[7] Section 120 provides, in pertinent part, that:

> Whoever, without right enters or remains in or upon the . . . . buildings . . . of another, after having been forbidden so to do by the person who has lawful control of said premises . . . shall be punished by a fine of not more than one hundred dollars or by imprisonment for not more than thirty days or both such fine and imprisonment . . . . A person who is found committing such trespass may be arrested by a . . . police officer and kept in custody in a convenient place, not more than twenty-four hours, Sunday excepted, until a complaint can be made against him for the offence, and he be taken upon a warrant issued upon such complaint.

Mass. Gen. Laws ch. 266, § 120.

violating the no trespass order. (Docket Entry # 70).[8]

Feinman had also asked an officer of the New Bedford Police Department to investigate an assault upon Feinman "by two defendants." (Docket Entry # 70). The department apparently took no action.

Feinman's telephoned complaints to Lt. Hebert and others at the New Bedford Police Department in the fall of 2003 centered around the use of Feinman's property at 195 Riverside Avenue. As set forth in the affidavit, Feinman's property included a trailer and he complains about allowing defendant Thomas Brunelle "to drive a motor vehicle knowing that the defendant had no driver's

---

[8] Docket Entry number 70, which attaches the no trespass order, is a filing signed by Feinman "under the pains and penalties of perjury." As such, it is properly part of the summary judgment record. See United States v. Gomez-Vigil, 929 F.2d 254, 258 (6th Cir. 1991) (28 U.S.C. § 1746 "allows use of 'unsworn declaration under pain and penalty of perjury' in lieu of sworn oaths"); Uncle Henry's, Inc. v. Plaut Consulting, Inc., 240 F.Supp.2d 63, 69 (D.Me. 2003) ("[a]ffidavits need not be notarized to be cognizable on summary judgment so long as they are made under penalties of perjury in accordance with 28 U.S.C. § 1746"), aff'd, 2005 WL 407394 (1st Cir. Feb. 22, 2005). This remains true even though Feinman submitted the affidavit in opposition to a prior motion to dismiss as opposed to in opposition to the present motion for summary judgment. See Carmona v. Toledo, 215 F.3d 124, 132 n. 7 (1st Cir. 2000) ("even though Carmona's affidavit was submitted to support a different motion, we take her sworn assertions as true in evaluating the summary judgment record"). Likewise, the attached no trespass order is also properly considered part of the record. See Carmona v. Toledo, 215 F.3d at 132 n. 7.

Feinman's unsupported suspicion that Lt. "Hebert conspired with FBI agent Chuck Prunier to harbor other defendants in this case by allowing them to break the law," although contained in the aforementioned affidavit, is conclusory at best and otherwise speculative. See Dow v. United Brotherhood of Carpenters & Joiners, 1 F.3d 56, 58 (1st Cir. 1993) (holding that "unsupported speculation" will not suffice to block summary judgment).

license."  (Docket Entry # 70).  Feinman also attests that "the defendants" used Feinman's "trailer with illegal registered tags."  (Docket Entry # 70).  During one or more telephone conversations with Lt. Hebert, Feinman communicated his belief that the trailer was being used illegally and that the vehicle was "unregistered, uninsured and that use of it would expose him to liability."  (Docket Entry # 113, ¶ 10; Docket Entry # 113, Ex. 1).

Upon receiving Feinman's first telephone call complaining about the use of his property, Lt. Hebert dispatched an officer to investigate.  (Docket Entry # 113, ¶ 8).  The officer visited the scene at 195 Riverside Avenue and located the trailer and other property.  The property was not in use by other individuals.  Nor did the property "appear to have been used and the persons present at 195 Riverside Avenue repeated that they were not using the trailer or other property due to the ongoing litigation and FBI investigation" regarding LFS.  (Docket Entry # 113, Ex. 1; Docket Entry # 113, ¶ 8).

On the same day in the fall of 2003, Lt. Hebert also telephoned Prunier in accordance with Feinman's suggestion described <u>supra</u>.  Prunier confirmed the existence of the ongoing investigation into the allegations of misconduct concerning LFS.  (Docket Entry # 113, Ex. 1; Docket Entry # 113, ¶ 9).

On November 13, 2003, Joel Anapol ("Anapol"), one of the property owners of 195 Riverside Avenue, signed an affidavit.  The affidavit asseverates that Feinman had Anapol's authorization

13

and that LFS did not have Anapol's permission to use the property. (Docket Entry # 70, Ex. B).

In a letter dated December 2, 2003, Feinman wrote to Lt. Hebert reporting that individuals were "using and abusing" his property without his permission. (Docket Entry # 113, Ex. A). On each occasion when Lt. Hebert dispatched an officer to 195 Riverside Avenue, however, the investigating officer would discover that the trailer did not appear to have been used. After each occasion and based upon his 28 years as a police officer, Lt. Hebert would conclude that he did not have probable cause to pursue a criminal enforcement action inasmuch as "the investigating officer found no evidence of use of the disputed property, the FBI investigation was ongoing, and there was litigation regarding the rightful owner of the property." (Docket Entry # 113, ¶ 13; Docket Entry # 113, Ex. 1).

DISCUSSION

In seeking summary judgment, Lt. Hebert and the unidentified New Bedford police officers correctly point out that the amended complaint contains no factual allegations against the unidentified New Bedford police officers. With respect to Lt. Hebert, the single reference to him in the 49 paragraph amended complaint relates to the allegations of a conspiracy between inter alia Prunier, Attorney Grimes, defendant Chris Markey, an assistant district attorney and the brother of an attorney representing a creditor in a bankruptcy proceeding, the

bankruptcy trustee and defendant Detective Christopher Richmond of the Achusnet Police Department.  In pertinent part, the allegation reads as follows:

> The defendants manipulated vendors and creditors of the plaintiff by using equipment not owned by them on interstate highways without insurance or registrations.  Lieutenant Hebert of the New Bedford Police Department conspired with the FBI agent not to intrude in this matter.  It is also noted that Attorney Stewart Grimes told individuals and vendors that he was in control of all the bankruptcy assets, as well as the plaintiff's personal belongings . . . Attorney Grimes flatly refused to release any of the plaintiff's personal property.  Attorney Grimes conspired with the New Bedford Police Department, as well as the FBI, to control the plaintiff's property.

(Docket Entry # 103, ¶ 11).

Liberally reading the amended complaint, it raises a conspiracy claim under section 1983[9] against Lt. Hebert and the unidentified New Bedford police officers and, arguably, a false imprisonment claim under section 1983.  As argued by Lt. Hebert and the unidentified New Bedford police officers, the latter claim fails for reasons similar to those set forth in the prior recommendation (Docket Entry # 102, pp. 20-22) as detailed infra.

Turning to the section 1983 conspiracy claim, it requires the plaintiff to show an actual abridgment of a federally protected right:

> The fact that a plaintiff styles her claim as a conspiracy to prosecute her maliciously does not diminish her need to show a constitutional deprivation.  In order to make out an actionable conspiracy under section 1983, a plaintiff has to prove not only a conspiratorial agreement but also an actual abridgment of some federally-secured right.  Moreover, it is

---

[9] The amended complaint does not cite to 42 U.S.C. § 1985(3).

15

>    the plaintiff's burden to identify the specific
>    constitutional right infringed.

Nieves v. McSweeney, 241 F.3d 46, 53 (1st Cir. 2001) (citations omitted); accord Torres-Rosado v. Rotger-Sabat, 335 F.3d at 15 (same; quoting Nieves); Ousley v. Town of Lincoln through its Finance Director, 313 F.Supp.2d 78, 85 (D.R.I. 2004) ("[w]hatever the alleged wrong, be it false arrest, an illegal seizure, or malicious prosecution, a plaintiff alleging a § 1983 conspiracy must establish '"an actual deprivation of a right secured by the Constitution and laws"'").

The arrest for violating the no trespass order was constitutional. The summary judgment record contains the facially valid no trespass order, the admission that Feinman went to the property and that Shawn Gore, upon seeing him, notified the New Bedford Police Department. Furthermore, the record fails to contain any evidence that Lt. Hebert was even on duty at the time of the arrest for violating the no trespass order. Hence, the existence of probable cause and the constitutionality of the arrest eviscerates the section 1983 false arrest claim. See Abraham v. Nagle, 116 F.3d 11, 13-15 (1st Cir. 1997) (in section 1983 false arrest claim, "central question is whether Nagle at the time of the arrest had probable cause to believe that Ajao had committed the offense of disorderly conduct" which "largely defeats the false arrest claim").

Similarly, there was no abridgment of a federally-secured right vis-à-vis Lt. Hebert's conspiracy with Prunier "not to

intrude" in the use and/or abuse of Feinman's property at 165 Riverside Avenue.  First, although Feinman complains about Lt. Hebert's failure to intrude, Lt. Hebert did take action in response to Feinman's concerns.  Lt. Hebert contacted Prunier, ascertained the existence of the FBI investigation and dispatched, on at least one occasion, an officer to the scene to investigate Feinman's allegations.

It is also well established that, "[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973).  In circumstances other than incarceration where the state has "some responsibility for [an inmate's] safety and general well-being," the Supreme Court rejects the existence of a substantive due process right for the police to protect citizens from the actions of another private citizen. DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 195-200 (1997) (noting that "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors"); see also Soto v. Flores, 103 F.3d 1056, 1063 (1st Cir. 1997) ("DeShaney clearly establishes that the state does not have a constitutional duty to protect its citizens from private violence").  Consequently, the mere failure on the part of Lt. Hebert to intrude upon the actions of another private citizen or on the part of LFS in using Feinman's property does not give rise

to a federally-secured right.[10]

While the amended complaint fails to denote whether Feinman is suing Lt. Hebert or the unidentified New Bedford police officers in their individual or official capacity, an official capacity claim is likewise without merit.  As argued by Lt. Hebert and the unidentified New Bedford police officers, there is no evidence to support a claim that the New Bedford Police Department caused the deprivation through an unconstitutional policy or custom or as a result of inadequate training or supervision amounting to deliberate indifference toward Feinman's constitutional rights.  See Strahan v. Frazier, 156 F.Supp.2d 80, 100 (D.Mass. 2001) (noting that claims against the police officers in their official capacity are treated as claims against the city requiring existence of "municipal custom or policy of deliberate indifference to the commission of constitutional violations by police officers" and causal connection), aff'd, 2003 WL 1411339 (1st Cir. March 21, 2003).  Given the lack of facts to support the existence of such a policy or custom, summary judgment on any official capacity claim is warranted.

## CONCLUSION

---

[10] The failure to set forth facts sufficient to show a trial worthy issue that Feinman's constitutional rights were violated by Lt. Hebert or the unidentified New Bedford police officers likewise dooms any MCRA claim, as argued by these defendants (Docket Entry # 112, n. 2).  Nor is there any evidence to support a deprivation by "'threats, intimidation or coercion.'"  Swanset Development v. City of Taunton, 668 N.E.2d 333, 337 (Mass. 1996) (quoting the MCRA).

In accordance with the foregoing discussion, this court **RECOMMENDS**[11] that the Sheriff's motion for summary judgment (Docket Entry # 118) be **ALLOWED** to the extent of dismissing the civil rights claims under section 1983 and the MCRA brought against the Sheriff.  This court further **RECOMMENDS**[12] that the motion for summary judgment (Docket Entry # 111) brought by Lt. Hebert and the unidentified New Bedford police officers be **ALLOWED** and that the section 1983 and MCRA claims against them be dismissed.

                                                            /s/ Marianne B. Bowler
                                                            **MARIANNE B. BOWLER**
                                                            United States Magistrate Judge

---

[11] Any objections to this Report and Recommendation must be filed with the Clerk of Court within ten days of receipt of the Report and Recommendation to which objection is made and the basis for such objection.  Any party may respond to another party's objections within ten days after service of the objections.  Failure to file objections within the specified time waives the right to appeal the order.  United States v. Escoboza Vega, 678 F.2d 376, 378-379 (1st Cir. 1982); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).

[12] See the previous footnote.