```
              UNITED STATES DISTRICT COURT
                DISTRICT OF MASSACHUSETTS
```

ALEX FEINMAN,
    Plaintiff,

    v.                                               CIVIL ACTION NO.
                                                              03-12301-GAO

DOMINIC NICOLACI; MICHELINA ANDRADE;
JAMES BURGESS; ATTORNEY STEWART GRIMES;
CHIEF OF POLICE, New Bedford Police Department;
SHERIFF, Bristol County's Sheriff Department;
BONNIE DEMERS; ROSALIE HASSEY;
LFS, INCORPORATED;
CHUCK PRUNIER, Special Agent, FBI;
DETECTIVE CHRISTOPHER RICHMOND,
Acushnet Police Department;
STATE ATTORNEY CHRIS MARKEY;
THOMAS BRUNELLE; CAROL VER CAMMEN;
KENNETH VER CAMMEN; LYDIA NICOLACI;
SHAWN GORE;
LIEUTENANT HEBERT AND UNKNOWN OFFICERS,
New Bedford Police Department;
JUDGE DAVID TURCOTTE, New Bedford District Court; and
ROBERT QUINONES,
    Defendants.[1]

**REPORT AND RECOMMENDATION RE:
PLAINTIFF'S MOTION TO AMEND
AND ENLARGE COMPLAINT (DOCKET ENTRY # 127);
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(DOCKET ENTRY # 132)**

**March 15, 2006**

**BOWLER, U.S.M.J.**

    Pending before this court are two motions in the above styled civil rights action. (Docket Entry ## 127 & 132). At an

---

[1] The amended complaint (Docket Entry # 103) lists the above noted defendants in the caption. It also purports to name certain defendants who, by virtue of this court's Report and Recommendation (Docket Entry # 102), are no longer defendants in this action: Bail Commissioners, John Doe (1) and John Doe (2), State of Massachusetts; Attorney David Madoff; Stephanie Palmer; Nicole Mendonca; and Christopher Baty.

October 26, 2005 hearing, this court took under advisement plaintiff Alex Feinman's motion to amend and enlarge the complaint. (Docket Entry # 127). Having determined that a hearing is not necessary, the motion for summary judgment filed by defendant Sheriff, Bristol County ("the Sheriff")[2] (Docket Entry # 132) is also ripe for review.

In the first motion, Alex Feinman ("Feinman") seeks to amend and enlarge the amended complaint. (Docket Entry # 127). He seeks to amend because of the prior dismissal of various claims as premature under the doctrine of Heck v. Humphrey, 512 U.S. 477 (1994). The Sheriff opposes the motion. (Docket Entry # 129).

In the second motion, the Sheriff asserts that there was no violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131-12134, and moves for summary judgment on this claim. (Docket Entry # 132). The Sheriff contends that the ADA claim in the amended complaint is devoid of merit. (Docket Entry # 133). Feinman opposes the motion. (Docket Entry # 134).

---

[2] The Sheriff does not object to the manner in which plaintiff Alex Feinman ("Feinman") names the Sheriff in the caption of the proposed amended complaint, to wit, "Bristol County Sheriff and Deputy Sheriffs in charge of Bristol County Prison." The body of the proposed amended complaint references only "Bristol County Sheriff's Department." (Docket Entry # 128, Relief ¶ 12). Feinman is proceeding pro se. Accordingly, affording the proposed amended complaint liberal construction, Feinman names the proper party, to wit, the Sheriff, Bristol County.

I.  PLAINTIFF'S MOTION TO AMEND AND ENLARGE COMPLAINT (DOCKET ENTRY # 127)

Pending before this court is the motion to amend and enlarge the amended complaint (Docket Entry # 103). (Docket Entry # 127). The Sheriff opposes the motion on the basis that the recent criminal verdict of not guilty does not alter this court's prior entry of summary judgment in favor of the Sheriff on the 42 U.S.C. § 1983 ("section 1983") claim (Docket Entry # 124). (Docket Entry # 129).

The Sheriff challenges the proposed amendment on the basis of futility. An "amendment is not deemed futile as long as the proposed amended complaint sets forth a general scenario which, if proven, would entitle the plaintiff to relief against the defendant on some cognizable theory." Hatch v. Department for Children, Youth and Their Families, 274 F.3d 12, 19 (1st Cir. 2001). Accordingly, the facts, for purposes of evaluating the motion to amend, are set forth in the proposed amended complaint (Docket Entry # 128) and are as follows.

## FACTUAL HISTORY

In June 2003, Feinman entered into an agreement with defendants Dominic and Lydia Nicolaci to use the premises at 195 Riverside Avenue in New Bedford, Massachusetts for the purpose of housing Feinman's office and equipment. Joel Anapol (listed on the deed of the property along with Dominic Nicolaci) approved of

this agreement. Feinman utilized the property for business purposes for the next four months. Defendant Michelina Andrade ("Andrade") was hired in August 2003 for inventory control.

In September 2003, defendant Thomas Brunelle ("Brunelle") went into Feinman's office at 195 Riverside Avenue and threatened Feinman with assault and bodily harm. Brunelle was intoxicated and began pushing and threatening Feinman. Employees eventually broke up this altercation.

On October 10, 2003, Brunelle and defendant James Burgess ("Burgess") went into 195 Riverside Avenue and assaulted Feinman by punching and kicking him. A group of employees witnessed the assault.

Two days later, Andrade took some fur coats from Feinman for cleaning. She also took a gold diamond ring to be sized.

Feinman employed defendant Carol Ver Cammen ("Ver Cammen") as a secretary. Feinman alleges that she used check stubs to falsify her mortgage application.

On October 23, 2003, Burgess went into Feinman's office and brutally beat Feinman by kicking him. Feinman notified Burgess that he was no longer employed because of his abuse of narcotics.

On October 26, 2003, Feinman was arrested by defendant Detective Christopher Richmond of the Acushnet Police Department ("Detective Richmond").[3] Feinman ascertained from Detective

---

[3] Feinman incorrectly referred to Detective "Richardson" in the proposed amended complaint. (Docket Entry # 128, ¶ ¶ 19 &

Richmond that his arrest was in conjunction with an overcharge involving the GAP Corporation. As a result of the arrest, Feinman was placed in the custody of the Sheriff. The Sheriff purportedly "abused [Feinman's] medical care." (Docket Entry # 128, Relief ¶ 12).

While Feinman was in the custody of the Sheriff, he was served with a no trespass order signed by defendant Attorney Stewart Grimes ("Attorney Grimes") that covered the premises at 195 Riverside Avenue where defendant LFS, Inc.[4] had offices. Attorney Grimes had knowledge that Feinman had a lease at this location.

Bail was set in the amount of $100,000 purportedly due to an alleged conflict of interest on the part of the state's attorney, defendant Christopher Markey ("Markey"). Markey's brother represented one of Feinman's largest creditors in a prior action. At this time, Brunelle, Ver Cammen and Andrade purportedly telephoned the Clerk-Magistrate for the New Bedford Division of the District Court Department of Bristol County and told an official that the bail money gathered by Joyce Feinman, Feinman's wife, was stolen. The same three defendants allegedly met to conspire against Feinman and telephoned the FBI to raise

---

22).

[4] LFS, Inc. was a "descendant" of L. Feinman & Sons (Docket Entry # 128, ¶ 13), a business in which Feinman was involved. Both companies moved their offices to 195 Riverside Avenue in June 2003.

suspicion against Feinman.

After being released from custody, Feinman entered the premises at 195 Riverside Avenue on October 30, 2003, in order to retrieve some of his paperwork and belongings. He was arrested for trespassing by one or more members of the New Bedford Police Department. Numerous defendants went through Feinman's personal property. Feinman also notified the New Bedford Police Department that some defendants were using his equipment in violation of the law.

Feinman was found not guilty on the related trespassing charge in the New Bedford Division of the District Court Department of Bristol County ("the trial court"), an assertion not challenged by the Sheriff nor any other defendant. Feinman sets forth this factual assertion in the motion (Docket Entry # 127) as opposed to the proposed amended complaint (Docket Entry # 128). Given his pro se status and the absence of a challenge on the part of any defendant, this court accepts this fact as true for the purpose of resolving the motion to amend.

## DISCUSSION

Leave to amend under Rule 15 "'is freely given when justice so requires'" absent an adequate basis to deny amendment such as futility, bad faith, undue delay or a dilatory motive. Maine State Building and Construction Trades Council, AFL-CIO v. United States Department of Labor, 359 F.3d 14, 19 (1st Cir. 2004).

Futility of a proposed amendment "is gauged by reference to the liberal criteria of Federal Rule of Civil Procedure 12(b)(6)." Hatch v. Department for Children, Youth and Their Families, 274 F.3d at 19.

The Supreme Court in Heck v. Humphrey, 512 U.S. 477 (1994), held that a plaintiff bringing suit under section 1983 must first prove that the conviction has either "been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[,]" in order to recover damages.  Heck v. Humphrey, 512 U.S. at 486-487.  As further explained by the Court in Heck:

> A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.  Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

Heck v. Humphrey, 512 U.S. at 487 (emphasis in original).

As previously noted, for present purposes there has been a favorable termination of the criminal charge in state court. Inasmuch as Feinman has met the requirement set forth in Heck, the section 1983 claims are no longer premature under the Heck doctrine.

Feinman's amended section 1983 claims require analysis against six defendants:  (1) the Sheriff; (2) defendant

Lieutenant Hebert and the unknown officers of the New Bedford Police Department; (3) Detective Richmond; (4) Markey; (5) defendant Chuck Prunier ("Prunier"), special agent with the FBI;[5] and (6) defendant Chief of Police, New Bedford ("Chief of Police"),[6] due to the section 1983 claims against these defendants being previously dismissed.

The section 1983 claim against the Sheriff has already been decided on the merits and the decision had no relation to the <u>Heck</u> doctrine. (Docket Entry # 124). Summary judgment on the section 1983 claim against the Sheriff in his individual and official capacities was found appropriate. (Docket Entry # 124). Therefore, under the law of this case, Feinman is not entitled to amend or enlarge the complaint to encompass the section 1983 claim against the Sheriff.

The same is true for the false imprisonment and conspiracy claims under section 1983 against defendant Lieutenant Hebert and the unknown officers of the New Bedford Police Department. The

---

[5] Prunier is named in the caption of the proposed amended complaint, but he is not referred to by name anywhere in the body of the complaint, which refers only generally to the FBI. (Docket Entry # 128).

[6] The Chief of Police does not object to the manner in which Feinman names the Chief of Police in the caption of the proposed amended complaint, to wit, "Chief of Police, New Bedford." The body of the proposed amended complaint references only "New Bedford Police Department" and includes one reference to the "City of New Bedford" (Docket Entry # 128, Relief ¶ 13). There have been previous references by this court to "New Bedford Police Chief" and by Feinman to "Chief of Police, New Bedford Police Department." This court deems all of these names to refer to the same party, to wit, Chief of Police, New Bedford.

section 1983 claims against these defendants were dismissed on summary judgment on the merits as opposed to under the Heck doctrine. (Docket Entry # 124). Feinman offers no new facts that would alter this prior disposition. Under the law of the case doctrine, the section 1983 claims against the foregoing defendants should not be resurrected through the motion to amend.

The previous motion to dismiss filed by Detective Richmond (Docket Entry # 49) was allowed subject to giving Feinman the opportunity to refile the section 1983 claim against Detective Richmond at a later date if and when he obtained a favorable determination of the then pending criminal charges in state court. (Docket Entry # 102). Accordingly, Feinman is allowed to amend his amended complaint (Docket Entry # 103) to include the section 1983 claim against Detective Richmond.

The section 1983 claim against Markey was previously dismissed. This court recommended the dismissal of the section 1983 claim in Markey's official capacity with prejudice. (Docket Entry # 102). In Markey's individual capacity, this court recommended dismissal of the claim with prejudice on the basis of absolute immunity. (Docket Entry # 102). Since the noted exceptions to prosecutorial immunity made by the Supreme Court[7] are still not alleged in the proposed amended complaint, Markey's

---

[7] "A prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993).

conduct does not fall into one of these exceptions. Markey originally argued the Heck doctrine in the alternative (Docket Entry # 85) but the section 1983 claim made against him was dismissed with prejudice on other grounds. (Docket Entry # 102).

The section 1983 claim against Prunier was dismissed due to improper service and under the Heck doctrine. Prunier's service has still not been perfected. Absent proper service, Prunier is not a party to this action.

The section 1983 claim against the Chief of Police was also dismissed. (Docket Entry # 102). This court, however, gave Feinman the opportunity to file a motion for leave to amend the amended complaint within 30 days to include a section 1983 claim against the Chief of Police and required Feinman to set forth additional facts indicating that the Chief of Police lacked probable cause to make the arrest. (Docket Entry # 102). Although the amended complaint was filed within the 30 day time period, Feinman alleges no additional facts to cure the foregoing defect. Therefore, the section 1983 claim against the Chief of Police remains dismissed.

Accordingly, Feinman's motion to amend and enlarge complaint is denied except for the section 1983 claim against Detective Richmond. The prior amended complaint (Docket Entry # 103) shall continue to govern these proceedings with the inclusion of the section 1983 claim against Detective Richmond and the exclusion of the following parties: Bail Commissioners, John Doe (1) and

John Doe (2), State of Massachusetts; Attorney David Madoff; Stephanie Palmer; Nicole Mendonca; Christopher Baty;[8] and Prunier.

II. <u>DEFENDANT SHERIFF'S MOTION FOR SUMMARY JUDGMENT (DOCKET ENTRY # 132)</u>

Summary judgment is appropriate when "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.'"  <u>Carroll v. Xerox Corp.</u>, 294 F.3d 231, 236 (1st Cir. 2002) (quoting Fed. R. Civ. P. 56(c)).  A "genuine" factual issue exists where "the evidence relevant to the issue, viewed in the light most flattering to the party opposing the motion, [is] sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side."  <u>National Amusements v. Town of Dedham</u>, 43 F.3d 731, 735 (1st Cir. 1995), <u>cert. denied</u>, 515 U.S. 1103 (1995).  A "material" fact "means that a contested fact has the potential to alter the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant."  <u>Smith v. F.W. Morse & Co., Inc.</u>, 76 F.3d 413, 428 (1st Cir. 1996).

Disputed facts and inferences therefrom are drawn in favor of the nonmoving party, Feinman.  <u>Mullin v. Raytheon Co.</u>, 164

---

[8] See footnote one.

F.3d 696, 698 (1st Cir. 1999), cert. denied, 528 U.S. 811 (1999). The plaintiff, however, "'may not rest upon the mere allegations or denials of [his] pleading.'" Torres-Rosado v. Rotger-Sabat, 335 F.3d 1, 8 (1st Cir. 2003) (quoting Rule 56(e)). Consequently, "[a]n unsworn assertion of fact in the complaint alone is not enough to create a material factual dispute." Torres-Rosado v. Rotger-Sabat, 335 F.3d at 8. In general, the "essential role [of summary judgment] is 'to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.'" Mullin v. Raytheon Co., 164 F.3d at 698.

Feinman does not dispute that the claims in the amended complaint against the Sheriff concern a purported denial of medical care. (Docket Entry # 123). The amended complaint alleges that while in the custody of the Sheriff, Feinman was not provided medical care (Docket Entry # 103, ¶ 14) in contravention of the ADA.[9] The Sheriff's motion for summary judgment (Docket Entry # 132) limits itself to addressing the civil rights claim for the alleged denial of medical care under the ADA. Facts in the summary judgment record are as follows.

On October 24, 2003, an arrest warrant issued from the Acushnet County Police Department charging Feinman with credit card fraud. The charges stemmed from an incident occurring on

---

[9] The caption of the amended complaint (Docket Entry # 103) refers to the ADA.

April 9, 2003.  (Docket Entry # 121, Ex. A).

Feinman was arrested by Detective Richmond on October 27, 2003.  At the time of arrest, Joyce Feinman told Detective Richmond that her husband had "medical problems."  (Docket Entry # 134, J. Feinman Affidavit ("Aff.") ¶ 1).

Feinman appeared before the trial court the same day. Feinman was unable to post the bail set by the trial court in the amount of $10,000 cash or a $100,000 bond.  Consequently, the trial court committed Feinman to the custody of the Bristol County House of Correction in North Dartmouth, Massachusetts. Feinman arrived at the institution at an undetermined time on October 27, 2003.  (Docket Entry # 121, Ex. A & E).

At 5:00 p.m. on October 27, 2003, one or more staff members of Prison Health Services, Inc. evaluated Feinman.  (Docket Entry # 121, Ex. C & D).  Feinman was given 400 milligrams of Motrin for pain as well as two other medications in accordance with detoxification protocol.  (Docket Entry # 120, ¶ 5); LR. 56.1; Cochran v. Quest Software, Inc., 328 F.3d 1, 12 (1st Cir. 2003) (the plaintiff's failure to contest date in LR. 56.1 statement of material facts caused date to be admitted on summary judgment); Stonkus v. City of Brockton School Department, 322 F.3d 97, 102 (1st Cir. 2003) (citing LR. 56.1 and deeming admitted the undisputed material facts that the plaintiff failed to controvert); see Kenda Corp., Inc. v. Pot O'Gold Money Leagues, Inc., 329 F.3d 216, 225 n. 7 (1st Cir. 2003) (citing principle

that "'[p]ro se status does not insulate a party from complying with procedural and substantive law'").

At an unspecified time, Joyce Feinman telephoned the prison to speak with an official regarding Feinman's medical condition and "no one would talk with [her]." (Docket Entry # 134, Aff. ¶ 2). During an attempted conference call, Joyce Feinman telephoned the facility with Joe Andrade, who Joyce Feinman describes as a "doctor from Beth Israel". (Docket Entry # 134, Aff. ¶ 2). Feinman had a "bad" infection, a temperature over 103 degrees and "had no right hip." (Docket Entry # 134, Aff. ¶ 2). He had a wound from a recent surgery that was still healing and bleeding. (Docket Entry # 134, Aff. ¶ 2). Feinman was prescribed 300 milligrams of Methadone daily for pain control by a "Dr. Reilly of the New England Baptist Hospital," according to Joyce Feinman. (Docket Entry # 134, Aff. ¶ 2).[10]

At 10:45 a.m. on October 28, 2003, Feinman was again seen by staff at Prison Health Services, Inc. and underwent a physical examination. (Docket Entry # 121, Ex. D). As a result of the examination, Feinman was given an increased dosage of 600 milligrams of Motrin and access to a bottom bunk bed due to his hip condition. (Docket Entry # 120, ¶ 6); LR. 56.1; Cochran v. Quest Software, Inc., 328 F.3d at 12; Stonkus v. City of Brockton School Department, 322 F.3d at 102; see Kenda Corp., Inc. v. Pot

---

[10] Joyce Feinman's affidavit contains additional averments which amount to hearsay and, therefore, are not included in the summary judgment record.

O'Gold Money Leagues, Inc., 329 F.3d at 225 n. 7.  At an undetermined time later that day, Feinman made bail and was released from the custody of the Sheriff after spending less than 24 hours at the facility.  (Docket Entry # 121, Ex. E).

DISCUSSION

Title II of the ADA prohibits public entities from discriminating against disabled individuals.  Olmstead v. L.C., by Zimring, 527 U.S. 581, 587 (1999); see 42 U.S.C. § 12132 ("[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity").

ADA claims are analyzed under a three part test set forth in Parker v. Universidad de Puerto Rico, 225 F.3d 1, 5 (1st Cir. 2000).  In order to bring a proper claim under Title II, the plaintiff must establish:  "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability." Parker v. Universidad de Puerto Rico, 225 F.3d at 5; accord Mitchell v. Massachusetts Department of Correction, 190 F.Supp.2d 204, 211 (D.Mass. 2002).  The Sheriff challenges the first two

elements but does not address the third element.[11]  (Docket Entry # 133).

First, Feinman needs to present sufficient evidence that he is a "qualified individual with a disability."  See Mitchell v. Massachusetts Department of Correction, 190 F.Supp.2d at 212 (quoting 42 U.S.C. § 12131(2)).  Title II applies to prisoners in state facilities.  Pennsylvania Department of Corrections v. Yeskey, 524 U.S. 206, 213 (1998) ("[T]he plain text of Title II of the ADA unambiguously extends to state prison inmates").  Therefore, Feinman, in his capacity as a state prisoner, is a qualified individual to assert a claim under Title II of the ADA.

Every case under Title II requires an individualized examination of whether the plaintiff is disabled.  Sutton v. United Air Lines, Inc., 527 U.S. 471, 483 (1999) ("[W]hether a person has a disability under the ADA is an individualized inquiry"); see also Carroll v. Xerox Corp., 294 F.3d at 238.  The ADA specifically defines what constitutes a disability under the statute.  "The statute defines disability as:  '(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual.'"  Bragdon v. Abbott, 524 U.S. 624, 630 (1998) (quoting 42 U.S.C. § 12102(2)).

In accordance with this three-fold analysis under Bragdon, this court needs to first evaluate whether Feinman is "impaired"

---

[11] The third element, however, presumes fulfillment of the second element.

under the ADA and its corresponding regulations.[12]  "The phrase physical . . . impairment includes . . . conditions [such] as orthopedic . . . impairments . . . ."  28 C.F.R. § 35.104; see also Bragdon v. Abbott, 524 U.S. at 633.

Given the evidence that Feinman lacked a right hip, underwent a recent surgery and was examined twice by Prison Health Services, Inc., Feinman presents sufficient evidence to create a genuine issue of material fact that he is a "qualified individual with a disability."

Under the second element of the Parker test, Feinman is required to present sufficient evidence that he was denied the benefits of the Sheriff's services or was otherwise discriminated against.  Parker v. Universidad de Puerto Rico, 225 F.3d at 5.  Feinman's amended complaint asserts that he was denied the benefit of medical care when the Sheriff had knowledge that Feinman was "in need of medication prescribed by [his] certified physician."  (Docket Entry # 103, ¶ 14).

State prisons fall into the statutory definition of a public entity under Title II of the ADA.  See Pennsylvania Department of Corrections v. Yeskey, 524 U.S. at 210 (citing 42 U.S.C. § 12131(1)(B)).  In addition, state prisons fall under Title II as they provide inmates with medical "services."  See Pennsylvania

---

[12] The ADA specifically dictates that the Attorney General should promulgate regulations under Title II.  See 42 U.S.C. § 12134(a); see also Downs v. Massachusetts Bay Transportation Authority, 13 F.Supp.2d 130, 135 (D.Mass. 1998).

Department of Corrections v. Yeskey, 524 U.S. at 210.

This element therefore turns on whether Feinman was denied the benefit of "proper" medical services. He was, however, twice treated by Prison Medical Services, Inc. and issued Motrin both times. The issuance of Motrin (as well as Tigan and Kaopectate) is in accordance with detoxification protocol. (Docket Entry # 120, ¶ 5); see LR. 56.1.

The Supreme Court has stated that the ADA does not require states to issue a certain standard of care for medical services nor does the ADA force states to provide a certain level of medical benefits. See Olmstead v. L.C., by Zimring, 527 U.S. at 603 n. 14. Given the foregoing evidence that Feinman was provided medical services, he fails to present sufficient evidence to create a genuine issue of material fact that he was denied the benefit of medical services.

Given the failure to create a trialworthy issue vis-à-vis the second element of an ADA claim under the Parker test, summary judgment on the ADA claim is appropriate.

CONCLUSION

In accordance with the foregoing discussion, this court **RECOMMENDS**[13] that Feinman's motion to amend and enlarge complaint

---

[13] Any objections to this Report and Recommendation must be filed with the Clerk of Court within ten days of receipt of the Report and Recommendation to which objection is made and the basis for such objection. Any party may respond to another party's objections within ten days after service of the

(Docket Entry # 127) be **DENIED** except as to Detective Richmond. In addition, the court **RECOMMENDS**[14] that the following parties remain dismissed as parties to this action:  Bail Commissioners, John Doe (1) and John Doe (2), State of Massachusetts; Attorney David Madoff; Stephanie Palmer; Nicole Mendonca; Christopher Baty; and Prunier.  This court further **RECOMMENDS**[15] that the motion for summary judgment (Docket Entry # 132) brought by the Sheriff be **ALLOWED** and that the ADA claim against the Sheriff be dismissed and that the Sheriff be dismissed as a party to this action.

This case is ready for trial.  The close of discovery was on August 6, 2004 and the dispositive motion deadline has passed.[16]

                                      /s/ Marianne B. Bowler
                                  **MARIANNE B. BOWLER**
                                  United States Magistrate Judge

---

objections.  Failure to file objections within the specified time waives the right to appeal the order.  United States v. Escoboza Vega, 678 F.2d 376, 378-379 (1st Cir. 1982); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); accord Boyle v. Boston Foundation, Inc., 788 F.Supp. 627, 632 (D.Mass. 1992).

[14] See the previous footnote.

[15] See the previous footnote.

[16] Motions for summary judgment were to be filed by December 17, 2004.