UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALEX FEINMAN, | DOCKET NO. 03 12301 GAO |
| PLAINTIFF | CIVIL ACTION 42 U.S.CA. 1983, 1991 AND AMERICAN DISABILITIES ACT |
| vs. | |

DOMINIC NICOLACI, Fairhaven, MA
THOMAS BRUNELLE, New Bedford, MA
MICHELINA ANDRADE, New Bedford, MA
JAMES BURGESS, Woonsocket, RI
ATTORNEY STEWART GRIMES, New Bedford, MA
LYDIA NICOLACI, Fairhaven, MA
ROSALIE HASSEY, Mattapoisett, MA
CAROL VER CAMMEN, New Bedford, MA
CHIEF OF POLICE, NEW BEDFORD, MA AND LEIUTENANT HEBERT AND
UNKNOWN OFFICERS OF THE NEW BEDFORD POLICE DEPARTMENT..
BRISTOL COUNTY SHERIFF AND DEPUTY SHERIFFS IN CHARGE OF BRISTOL
COUNTY PRISON.
CHUCK PRUNIIER, SPECIAL AGENT, FBI, Lakeville, MA
DETECTIVE CHRISTOPHER RICHMOND, ACUSHNET POLICE DEPARTMENT
STATE'S ATTORNEY CHRIS MARKEY, New Bedford, MA
JUDGE DAVID TURCOTTE, NEW BEDFORD DISTRICT COURT
CLERK MAGISTRATES, NEW BEDFORD DISTRICT COURT
JUDGE LANCE GARTH, NEW BEDFORD DISTRICT COURT.
    Defendants

PRELIMINARY STATEMENT

The plaintiff will establish proof of violation of his civil rights by physical force, threats, intimidation and coercion. The above-named defendants conspired as a while to remove Alex Feinman from the community as a free man by unlawful means as well as to remove him from 195 Riverside Avenue by means of a no-trespassing order. Each defendant individually played a part, however, some were more controlling of the situation than

others. The New Bedford Police Department conspired with Attorney Stewart Grimes by accepting a no-trespassing order against the plaintiff. It will be proven that if the New Bedford Police Department was trained in trespassing procedures, the plaintiff's civil rights would not have been violated to the extreme that they were. It will also be proven that the New Bedford Police Department knew the other defendants were using illegal equipment without proper licensing and insurance and protected the storage of stolen property belonging to the plaintiff, as well as making a false arrest against the plaintiff.

FACTS

1. Prior to June 2003, the corporations of L. Feinman & Sons, Acushnet Facility Maintenance, LFS, Inc., Acushnet Maintenance and Shawn Linn, Inc. were all domiciled at 1267 Main Street, Acushnet, Massachusetts. A.J. Properties also was housed at this location.

2. In June 2003, Alex Feinman met with Dominic Nicolaci and Lydia Nicolaci at their residence in Fairhaven, Massachusetts. They entered into an agreement allowing him to use 195 Riverside Avenue, formerly known as the Cliftex Maintenance Building, for the purpose of housing his office and equipment. It was understood by both parties that Mr. Feinman would have to get approval from Joel Anapol, who is a co-owner of said property. Both Dominic Nicolaci and Joel Anapol are listed on the deed. Joel Anapol agreed.

3. In return for this agreement, Alex Feinman, or his designee, would perform maintenance on said property owned by the above individuals and work as a consultant to improve the value of the property. It was also agreed that Alex Feinman would rent

space in the building to other business concerns, which he did to S. Car Restoration.

4. Alex Feinman took all his personal property from 1267 Main St., Acushnet and moved it to 195 Riverside Avenue. He also took all corporation books and records of L. Feinman & Sons and Acushnet Facility Maintenance, as well as LFS, Inc., Shawn Linn, Inc., Acushnet Maintenance Facility and his consulting business. All his personal legal papers and correspondence to his attorneys are at this location.

5. At the new location, Mr. Feinman also housed all the equipment which was to be picked up by creditors of L. Feinman & Sons and Acushnet Facility Maintenance. Mr. Feinman also housed equipment owned by others, such as Boston Equipment Company, Atlantic Coast Builders, and Allied Recycling. Mr. Feinman and his wife had all their personal papers and memorabilia, lawn furniture, items left to Mr. Feinman after his father's death, computers, office furniture and office equipment housed at this facility. Some of the property which is in bankruptcy was personally co-signed by other individuals who are not in bankruptcy.

6. In mid-August, 2003, Michelina was hired. Her original functions was for inventory control because she came from a supermarket where she worked in the grocery business for 11 years.

7. All hardware and software belongs to Mr. Feinman and members of his family are housed at this location, as well as his book of business and trademark registries.

8. Alex Feinman created an idea for recycling at the facility. He and others obtained a permit to do recycling under the name of Loyal Fast Service at this facility. Art Clark, Robert Stickles and Dominic Nicolaci would share in the proceeds as well as with

employees of LFS.

9. Mr. Feinman was working, with Robert Stickles, an architect from Scotsdale, Arizona, on a concept for an entertainment complex on the top floor at 194 Riverside Avenue, as well as working on permanent heat for the top two floors at 194 Riverside Avenue.

10. Mr. Feinman was working on creating a jet-ski park with the redevelopment authority of New Bedford.

11. In return for his services, Mr. Nicolaci , Mr. Anapol, and Lydia Hastings, the designee for Dominic Nicolaci, were allowing all parties to use the facility at limited cost. There was no signed lease,, but a verbal agreement between all parties.

12. LFS, Inc. was one of the corporations that moved from 1267 Main St., Acushnet to 195 Riverside Avenue, New Bedford and is still domiciled 1267 Main Street by the Secretary of State. This was a maintenance company which was a sister company of L. Feinman & Sons, Inc. which was formed by Donald Barnes, attorney.

13. Mr. Feinman formed this company with others when he was experiencing legal litigation with Universal Funding. LFS, Inc. took over the book of business of L. Feinman & Sons. LFS, Inc was strictly a descendant of L. Feinman & Sons.

14. In September, Thomas Brunelle and his uncle from Tennessee who came for a family reunion of the Brunelle's, went into Mr. Feinman's office and threatened him w assault and bodily harm. They were both intoxicated and a pushing match occurred by Mr. Brunelle screaming that he would kill Mr. Feinman if he wasn't paid money he alleged was owed to him. Employees broke up this altercation.

15. On October 10, 2003, James Burgess and Thomas Brunnell went to 195 Riverside

Avenue while intoxicated and in front of a group of employees, who will testify, physically assaulted Mr. Feinman, punching and kicking him.

16. Around October 12, 20003, Michelina Andrade was still working beside Mr. Feinman and Mr. Feinman asked her if she knew a place to get this mother's fur coats cleaned. She said yes, and she took them and also a gold and diamond ring to be sized.

17. Carol VerCammen was employed by Mr. Feinman as a secretary. She used L. Feinman & Sons check stubs and other stubs unknown to Mr. Feinman, to falsify her mortgage application.

18. On October 23, 2003, James Burgess went into Mr. Feinman's office and assaulted him in front of Jay Coutu, Clarence Love and Manny DePina because Mr. Feinman told Mr. Burgess he was no longer employed because of his abuse of narcotics. Mr. Burgess kicked and brutally beat him. It was reported to Scott Alfs of the New Bedford Plice Dept. the following day because Mr. Burgess was making a commotion with Mr. Brunelle with threats of death.

19. On October 26, 2003, Mr. Feinman was arrested by Detective Richardson of the Acushnet Police Department, not by a summons but by physical arrest, for an overcharge of $3000 on L.F. Feinman & Sons alleged overcharge of a customer, the GAP.

20. Attorney Stewart Grimes enacted a "no-trespassing" order against Alex Feinman and others who were not involved in their conspiracy to violate Mr. Feinman's civil rights. Stewart Grimes knew there was so signed lease, that Michelina was not employed when the agreement was made and that Christopher Baty and James Burgess were

employees of L. Feinman & Sons when the agreement was made with Dominic Nicolaci and Joel Anapol. At this time, he also knew LFS was not the only tenant at 195 Riverside Avenue. Attorney Grimes created an instrument of deception.

21. At the same time Mr. Feinman was arrested and placed under high bail, the defendants served Mr. Feinman with a "no trespassing order" at the Dartmouth Correctional Facility.

22. At the bail hearing a bail was set in the amount of $100,000 because because of the way Detective Richardson wrote his police report and the conflict of interest the state prosecutor had with Mr. Feinman with his family representing one of Mr. Feinman's largest creditors. He brought forth a 25-year-old internet article to facilitate state attorney Markey's arguments to the Court for bail.

23. At this time, Thomas Brunelle, Carol VerCammen and Michelina called the clerk magistrate's office and told them the bail money Mr. Feinman's wife had was stolen. This, and many other circumstances, were carried out for the purpose of keeping him incarcerated so they could take control of the premises at 195 Riverside Avenue.

24.. Prior to Mr. Feinman's arrest, Michelina Andrade, Thomas Brunelle, Chris Baty, Carol VerCammen met to create a conflict of harm, assault, lies and treachery and a smoke screen to enhance Mr. Feinman's arrest by hiring Attorney Grimes.

25. Stewart Grimes, Christ Baty, Michelina Andrade, Thomas Brunelle and James Burgess put a "no trespassing" order against Mr. Feinman and called the FBI to create a cloud of suspicion against Mr. Feinman. They had the FBI go into Mr. Feinman's offices without proper search warrants and go through his paperwork. The above defendants

manipulated the paperwork for the purposes of creating fraud and violated Mr. Feinman's civil rights.

26. Mr. Feinman went to his office after being released from custody to claim his paperwork and belongings and was arrested for trespassing in his own office by the New Bedford Police Department.

27. If the New Bedford Police Department was trained in the trespassing laws, they would have known the property and belonging's belonged to Mr. Feinman. They would not have arrested him but kept the peace so Mr. Feinman could remove his property from the premises.

28. Michelina Andrade, Carol VerCammen, Bonnie Demers and Chris Baty, with the FBI, went through Mr. Feinman's personal legal files and mailed them and faxed them in violation of Mr. Feinman's civil rights.

29. The New Bedford Police Department was notified of the defendants using Mr. Feinman's equipment without proper state licenses and insurance by law. The New Bedford Police Department harbored these defendants and knew of their illegal actions and allowed it to exist in violation of Mr. Feinman's civil rights.

30. On November 13, 2003, Michelina Andrade, with her attorney, perjured herself with an affidavit stating "Alex Feinman has a history of setting up dummy corporations, diverting the assets that the corporation acquires and subsequently bankrupting the corporation leaving others "holding the bag", as evidenced by his own complaint referencing the bankruptcies of two prior corporations that he was involved in". This is a fraudulent statement with no truth.

31. Attorney Stewart Grimes, Michelina Andrade, Dominic Nicolaci, Chris Baty, Carol Vercammen, Thomas Brunelle and James Burgess created a lease and back-dated it for purposes of deception to deprive Mr. Feinman of his civil rights.

32. Joel Anapol, a rightful owner of the property, was not notified and did not know of the fraud and deception of the above defendants to encompass part of his property.

33. The federal government issued subpoenas for paper documents belong to Mr. Feinman and said corporations. They issued the subpoena to the keeper of records at no address.

34. Attorney Grimes told the Court that the government impounded all of Mr. Feinman's property at 195 Riverside Avenue. This is untruthful. This never occurred.

35. Attorney Grimes alleged to the Court that Mr. Feinman had no property or any of his companies at 195 Riverside Avenue. This is untruthful.

36. Attorney Grimes also told the Court he has never received a letter regarding the belongings of Mr. Feinman from Donald Barnes, Mr. Feinman's lawyer. This is untruthful.

37. Carol VerCammen, Bonnie Demers, Christopher Baty, Michelina Andrade and James Burgess manipulated Mr. Feinman's phone books, software and created a mailing list for people to do business with them. When these customers did not do business with them or respond, they created hate mail about Mr. Feinman in violation of Mr. Feinman's civil rights.

38. Thomas Brunelle, James Burgess, Michelina Andrade, Bonnie Demers and Carol VerCammen gave state prosecutors Mr. Feinman's private and confidential paperwork

in violation of Mr. Feinman's civil rights because the government had no right to go through Mr. Feinman's papers without legal due process.

39. The defendants are harboring Mr. Feinman's property at 195 Riverside Avenue under lock and key and selling and destroy the same. This is a violation of Mr. Feinman's rights.

40. At Mr. Feinman's trial, the state prosecutor lied to the Court by saying there were papers served on his attorney regarding witnesses. This was post-marked and served to the clerk the day after the trial for the purpose of manipulating the truth. This is a violation of Mr. Feinman's civil rights.

RELIEF:

The plaintiff comes before this Court and asks for his basic constitutional rights to be restored in the following manner:

1. Order defendants to return all property belonging to the plaintiff an plaintiff's family and business associates.

2. Order the defendants to all healthcare costs and disability costs incurred by the Plaintiff.

3. Attach the property of all defendants so it cannot be transferred or sold.

4. Order that all information and paperwork given to the government by the illegal search and seizure not be used against the plaintiff in any way.

5. Order the defendants to pay the plaintiff $2,000,000 for loss of revenue.

6. Order that the defendants pay for all legal costs, punitive damages and lost wages of the plaintiff and be responsible for any lost property of the plaintiff.

7. Order the defendants to stand trial for perjury.

8. Order an investigation by the state's attorney regarding the plaintiff's assault allegations because the New Bedford Police Department, the state's attorney and the FBI would not investigate.

9. Order the City of New Bedford to pay the plaintiff $1,000,000 in damages because of their lack of training and their abuse of power.

10. Sanction the Town of Acushnet to pay the plaintiff $1,000,000 for abuse of power of their officers.

11. Order Stewart Grimes to be held responsible under his malpractice insurance for manipulating the law and for perjury not becoming an officer of the Court.

12. Order the Bristol County Sheriff's Department to pay the plaintiff $1,000,000 for abuse of his medical care.

13. Order Christopher Markey to pay the plaintiff $1,000,000 for abuse of power.

RESPECTIVELY SUBMITTED and signed under the pains and penalties of perjury this 16th day of August, 2005,

_____ Alex Feinman, pro se

CERTIFICATE OF SERVICE

I, Alex Feinman, hereby certify this Complaint was served upon the above-named defendants of their attorneys by U.S. Mail on August 16, 2005.

_____ Alex Feinman, pro se. 8/16/05

(10)

I, Alex Feinman, Pro Se, hereby certify that I have this date, August 16, 2005, served the foregoing document upon the following my U.S. Mail. There is a question of who is pro se, therefore, I have served pro se defendants via Stewart Grimes, Attorney.

Stewart H. Grimes, Esq.
James W. Simpson, Jr., Esq.
John J. Cloherty, III, Esq.
John J. Davis, Esq.
Joseph Tehan, Jr., Esq.
Ernest L. Sarason, Esq.
Judge David Turcotte
Judge Lance Garth
Dominic & Lydia Nicolaci
Jean M. Whitney, Assistant District Attorney
William R. Connolly, Assistant District Attorney
Sarah M. Joss, Assistant District Attorney
Donald J. Chausse, Probation Officer
Rosalie Hassey
Clerk Magistrate, New Bedford District Court
Roberta T. Brown, Esq., Attorney General's Office