UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 03-12301-GAO

)
ALEX FEINMAN,                           )
    Plaintiff                              )
                                        )
v.                                      )
                                        )
DETECTIVE CHRISTOPHER                   )
RICHMOND,                               )
    Defendant                              )
                                        )

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT, SERGEANT
CHRISTOPHER RICHMOND'S MOTION FOR SUMMARY JUDGMENT**

I. **PERTINENT BACKGROUND**

This is an action which arises out of the October 26, 2003 arrest of the pro se plaintiff, Alex Feinman [hereinafter "plaintiff], by the defendant, then-Detective (now Sergeant) Christopher Richmond [hereinafter "defendant"] of the Acushnet Police Department on charges of fraud and improper use of a credit card in violation of M.G.L. c. 266, § 37C, and larceny by false pretenses in violation of M.G.L. c. 266, § 30.

The undisputed record reveals that in late May, 2003 the defendant received a citizen's complaint from GAP, Inc. [hereinafter "GAP"] employees that a GAP executive, Sherri McInnis' credit card had $3,000.00 in unauthorized charges posted on April 9, 2003 from an Acushnet vendor. GAP Statements; Ex. A; Aff. of Def., ¶¶ 8-9, Ex. B. The defendant initiated an investigation, and discovered independent evidence and witness testimony supporting that indeed it was the plaintiff who had instructed one of his employees to charge $3,000.00 on the

GAP credit card by phone at the Texaco station using the GAP credit card data. Aff. of Def., ¶ 14, Ex. B; Arrest Warrant Application, Ex. C. Specifically, on May 28, 2003, the defendant spoke with the Texaco owner, George Pimental, who identified the plaintiff and the plaintiff's employee, "Stephanie," as the individuals responsible for the transactions in question, which was made in reconciliation of a $3,000.00 debt between the plaintiff's company and the Texaco station. Ex. B, ¶ 10 & 11; Ex. C. The GAP employees then verified that the plaintiff was given the credit card information by Ms. McInnis as tender of payment for a $730.80 job performed for GAP by the plaintiff's company at the Wrentham GAP location, but the GAP employees denied that any further charges or third party charges were authorized. GAP Statements, Ex. A; Aff. of Def., ¶¶ 12, 15 & 16, Ex. B; Arrest Warrant Application, Ex. C.

On June 11, 2003, the plaintiff and his employee, Stephanie Palmer, voluntarily presented at the Acushnet Police Department to be interviewed by the defendant. Ex. B, ¶13; Ex. C. Both verified that the plaintiff had been given the GAP account data to reconcile the $730.80 invoice, and that the plaintiff instructed Ms. Palmer to use the GAP card to make the $3,000.00 Texaco payment to settle other debts that GAP allegedly owed to the plaintiff for other jobs. Ex. B, ¶ 14; Ex. C. The plaintiff reported that he had used this method of debt collection before. Id. Ms. McInnis was confronted with this information, and again denied authorizing the Texaco transaction. Ex. B, ¶¶ 15 & 16; Ex. C.

During the investigation, the defendant performed a routine criminal background check on the plaintiff, and discovered that the plaintiff: 1) had an extensive criminal background that included offenses for fraud; 2) had been known to use several aliases to escape criminal prosecution in the past; and 3) had once escaped from a federal penitentiary where he was serving out a sentence. Aff. of Def., ¶ 17, Ex. B; Ex. C; Philadelphia Inquirer Articles, Ex. D.

Prior to October 21, 2003, the defendant consulted with Assistant District Attorney Christopher Markey regarding the results of the investigation of the GAP complaint. Aff. of Def., ¶ 20, Ex. B. ADA Markey advised that the conduct described was in violation of MASS. GEN. LAWS ch. 266 §§ 37C and 30 (credit card fraud/improper use of a credit card and theft by deception). Id. On October 24, 2003, the defendant sought out an arrest warrant for the plaintiff on those charges, supplying a narrative of his investigative results thus far. Id.; Ex. C. On or around October 24, 2003, the warrant was issued by a magistrate out of New Bedford District Court. Aff. of Def., ¶ 21, Ex. B; Arrest Warrant, Ex. E. On October 26, 2003, while on routine patrol, the defendant spotted the plaintiff walking his dog on a public street in Acushnet, explained the arrest warrant to the plaintiff, and executed the arrest warrant after accompanying the plaintiff to his home so that he could secure his dog, speak with his wife and call a lawyer. Aff. of Def., ¶ 22, Ex. B; Arrest Narrative & Summons Report, Ex. F.

After the arrest, the defendant wrote to the Bail Commissioner at ADA Markey's request, attaching the criminal background data as requested, and recommending that the ADA ask for $3,000.00 bail for the plaintiff. Ex. B ¶ 24; Bail Recommendation, Ex. G. The defendant believed and believes that this amount was appropriate, being the same as the amount of the unauthorized charges reportedly made at the Texaco in Acushnet, and especially so given the information regarding the plaintiff's apparent past criminal history, his apparent past flight from custody, his apparent past use of aliases to escape prosecution and his known roots out of state. Ex. B, ¶ 24. The defendant later learned that, despite the defendant's recommendation, the bail set by the Court was $10,000.00 cash or $100,000.00 surety; a number significantly higher than the defendant's recommended amount. Id., ¶ 25.

For the purpose of this motion, the defendant does not dispute that the plaintiff was the

beneficiary of a directed verdict of not guilty on the underlying criminal charges. Reportedly, the criminal trial judge read the applicable statutes to require actual, physical possession of the credit card in question to sustain a conviction on the offenses charged, and the undisputed facts revealed that the plaintiff never possessed the credit card, but in fact had ordered the Texaco purchases over the phone using the card data. Aff. of Def., ¶ 28, Ex. B.

The civil case at bar was dismissed without prejudice upon defendant's motion dated December 29, 2003 (docket no. 49), on the ground that it was premature since the underlying criminal charges were pending at that time. Report & Order, docket nos. 102 & 115. The motion to dismiss was granted upon the condition that the plaintiff could re-file his Complaint, should he prevail on the criminal charges. Report, docket no. 102, p. 26. In light of the directed verdict at the criminal trial, the plaintiff's motion to re-open this case was allowed as to the defendant pursuant to the previous reservation of his rights to do so. Report & Order, docket nos. 136, p. 9 & 139. With the Court's permission of July 18, 2006, the defendant now moves for summary judgment on the ground that there are no genuine issues of material fact, and the defendant is entitled to judgment as a matter of law.

II.   **ARGUMENT**

   a.   **Legal Standard – Summary Judgment**

"Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Barbour v. Dynamics Research Corp., 63 F.3d 32, 36 (1st Cir.1995) (quoting FED.R.CIV.P. 56(c)). "To succeed [in obtaining summary judgment], the moving party must show that there is an absence of evidence to support the nonmoving party's position." Rogers v.

4

Fair, 902 F.2d 140, 143 (1st Cir. 1990).

"Once the moving party has properly supported its motion for summary judgment, the burden shifts to the non-moving party, who 'may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial.'" Barbour, 63 F.3d at 37 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). "There must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted.'" Rogers, 902 F.2d at 143 (quoting Anderson, 477 U.S. at 249-50) (citations and footnote omitted). The Court must "view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." Barbour, 63 F.3d at 36.

Construing the pleading liberally, indeed generously, for this *pro se* plaintiff, it would appear that he claims at best that the defendant committed the torts of conspiracy, false arrest, false imprisonment, abuse of process and malicious prosecution, and the plaintiff appears to assert civil rights claims on these theories as well. Pl.'s Second Am. Compl.[1] The defendant asserts that on the undisputed facts there were no civil rights violations as a matter of law, and further, that the plaintiff has come forward with no evidence to support section 1983 or direct tort liability on the underlying tort theories. The defendant addresses each in turn.

b. **Section 1983**

In order to assert a claim under chapter 42 section 1983, a plaintiff must establish that the actor was acting under the color of state law and violated rights protected by the Constitution and laws. Adickes v. S.H. Cress & Co., 398 U.S. 144, 150 (1970). The defense concedes that it was

---

[1] According to the Clerk, the plaintiff's "Statement of Facts," docket no. 128, has been accepted by the Court as the plaintiff's operative pleading, since it is the only pleading attached to his "Motion to Amend" (docket no. 127). The only allegations implicating the defendant in this pleading are: 1) "Preliminary Statement," p. 1; 2) ¶ 19, p. 5; and 3) ¶ 22, p. 6.

acting under the color of law when arresting the plaintiff. Thus, the first inquiry in section 1983 analysis, in the context of this motion for summary judgment, is whether the facts, taken in a light most favorable to the plaintiff, demonstrate that the defendant's actions deprived the plaintiff of rights guaranteed under the Constitution or laws. Saucier v. Katz, 533 U.S. 194, 200-01 (2001). If there was no such deprivation, the claim fails. Baker v. McCollan, 443 U.S. 137, 142 (1979). If such a violation is supported, the Court must then inquire whether the facts, again viewed in a light most favorable to the plaintiff, show that it would be clear to a reasonable prudent officer that the defendant's conduct was unlawful. Saucier v. Katz, supra, 533 U.S. at 202. If this is not the case, then qualified immunity applies, and summary judgment must be granted. Id.

1. *There Was No Deprivation of the Plaintiff's Rights*

In the case at bar, although the Complaint is almost undecipherable (docket no. 128), the only right implicated is the right to be free from deprivation of liberty without a showing of probable cause. This right is protected by the Fourth Amendment, as applied to the states vis-à-vis the Fourteenth Amendment. U.S. CONST. amends. IV & XIV. This is also a right protected by the Massachusetts Declaration of Rights. MASS. CONST., Pt. 1, Art. 14. It is a right that is implicated by the plaintiff's assumed claims of false arrest, false imprisonment and conspiracy, and can support liability under section 1983. Santiago v. Fenton, 891 F.2d 373, 383 (1st Cir. 1989).

Probable cause insulates officers who seek out a criminal complaint, just as it does for officers who make warrantless arrests. Carey v. City of Fall River, 870 F.2d 40, 40 (1st Cir.1989). Where an arrest made pursuant to a constitutionally valid warrant, supported by probable cause, there is no constitutional violation and section 1983 liability does not lie. Baker,

supra, 443 U.S. at 143-44.  The United State Constitution commands that, "…no Warrant shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing…the persons…to be seized…." U.S. CONST. amend. IV.  This requirement is no different from that of article 14 of the Massachusetts Declaration of Rights.  Commonwealth v. Baldassini, 357 Mass. 670, 675 (1970).

Probable cause, in the context of the arrest for a crime in the Commonwealth, has been defined as, "such a state of facts in the mind of the [defendant] as would lead a man of ordinary caution and prudence to believe, or entertain an honest and strong suspicion, that the person is guilty."  Morreale v. DeZotell, 10 Mass.App.Ct. 281, 282 (1980); NOLAN & SARTORIO, 37 M.P.S., Torts, § 79, pg. 96 (2d ed. 1989 & 1993 Supp.).  See also, Gerstein v. Pugh, 420 U.S. 103, 111 (1975).

A magistrate is owed substantial deference in making a determination of probable cause. Burke v. Town of Walpole, 405 F.3d 66, 79 (1st Cir., 2005).  To render an otherwise constitutionally valid warrant unconstitutional, a plaintiff must demonstrate that the affiant seeking the warrant made false statements intentionally or with reckless disregard.  Franks v. Delaware, 438 U.S. 154, 171-72 (1978).  When facts are not in dispute, the question of whether there was probable cause is a legal one; a question of law for the judge. Carroll v. Gillespie, 14 Mass.App.Ct. 12, 19 (1982); Casavan v. Sage, 201 Mass. 547, 553 (1909).

The plaintiff's innocence of the charges in the arrest warrant is completely irrelevant to his claim of deprivation of liberty without due process of law, since Constitution does not guarantee that only the guilty will be arrested.  Baker, supra, 443 U.S. at 145.  The Constitution requires only a finding of probable cause by a neutral magistrate of the commission of a crime for any significant pre-trial detention of a criminal defendant to occur.  Id. at 143.  The

uncontroverted circumstances of this case clearly demonstrate that the arrest comported with the probable cause requirements of both the federal and state constitutions, and hence, did not violate a protected right.

It is beyond dispute that the defendant sought out and obtained a warrant from a neutral magistrate prior to arresting the plaintiff, attesting to articulable facts that demonstrated probable cause. Warrant Application, Ex. C; Warrant, Ex. E. As for the constitutionality/validity of the warrant, the plaintiff levies no challenge in this regard. The plaintiff has come forward with no evidence to suggest that probable cause was lacking, nor does he attempt to make any showing of falsity in the defendant's warrant application. Given the deference that must be afforded the magistrate, the plaintiff has failed to satisfy his burdens to produce evidence and prove this critical element of his case. This alone is ground for granting summary judgment to the defendant on the section 1983 claims (and, as argued below, the MCRA claims).

Whether the constitutionality of the warrant is the plaintiff's or the defendant's cross to bear, it is abundantly clear on the undisputed facts that: 1) probable cause existed in fact for the defendant's action; and 2) there were no falsities in the defendants warrant application at all, let alone "reckless or intentional" falsities. The defendant's application for the warrant articulated in great detail his factual findings after a thorough investigation, including documentary evidence and statements from named witnesses and complainants. Id. This included an admission from the plaintiff to the defendant, claiming some misguided right to "self-help" as GAP's creditor, admitting that the credit card information was given to him by GAP, Inc. solely for the purpose of reconciling a single charge of $730.80, and that he used it for purposes outside the express authority given to him by GAP. Id. Indeed he claimed to have done this before to other client's, id., supporting an inference that this was his plan all along when obtaining the

account data.

Even if the plaintiff denies making the aforementioned admission to the defendant, it cannot be considered a material fact for the purposes herein, because the remaining information garnered during the investigation independently supports that probable cause existed upon articulable facts for the warrant to issue. The defendant had written and oral statements from identified complainants (the GAP employees) reporting unauthorized use of their credit card, with credit card statements corroborating their complaints, a statement from Texaco owner Pimental identifying the plaintiff as the person who authorized the transaction. GAP Statements, Ex. A; Aff. of Def., ¶¶ 10-16, Ex. B; Warrant Application, Ex. C. The Constitution requires no more. Baker, supra, 443 U.S. at 143. Hence the warrant is constitutional, and no liability under section 1983 can attach. Franks, supra, 438 U.S. at 171-72; Baker, supra, 443 U.S. at 143-44.

2.  *The Defendant Is Entitled To Qualified Immunity*

As noted above, a police officer is protected with limited immunity from section 1983 claims, even if he later proves to be mistaken, so long as the officer was acting with the objectively reasonable belief that his or her actions were lawful. Harlow v. Fitzgerald, 457 U.S. 800, 815-19, 102 S.Ct. 2727 (1982). "In cases applying this standard to police arrests in this circuit, an arrest challenged as unsupported by probable cause is deemed objectively reasonable unless there *clearly* was no probable cause at the time the arrest was made." Floyd v. Farrell, 765 F.2d 1, 5 (1st Cir. 1985)(emphasis in original; internal quotations and citations omitted).

The defendant believed and believes to this day, as a veteran superior police officer with an advanced degree and extensive training in Constitutional Law and Criminal Procedure, that he was acting lawfully in seeking out, obtaining and executing the warrant. Aff. of Def., ¶ 29, Ex. B. Under the undisputed factual circumstances, that belief was objectively reasonable.

It was the defendant's sworn duty to investigate GAP's complaint as an officer of the law. The investigation was impartial, thorough and well-documented. Aff. of Def., ¶¶ 8-17, Ex. B; Warrant Application, Ex. C. The defendant consulted with ADA Markey, a practicing criminal attorney, prior to swearing out the warrant, as to the identity of the specific crimes committed, if any. Aff. of Def., ¶ 20, Ex. B. Attorney Markey advised that the given statutes had been violated on these facts, and sought and obtained the warrant from a magistrate upon the defendant's subsequent application. Id.; Warrant, Ex. E. Once the warrant issued, indeed it was the defendant's sworn duty to serve it as commanded by the Court. Ex. E. This overwhelmingly supports the reasonableness of the defendant's belief that his actions were lawful. The judicial interpretation of a subtle nuance to those statutes, correct or not (something about which reasonable minds could certainly differ, particularly with the theft by deception charge, which does not involve credit cards at all), cannot change that fact. The defendant is not a lawyer, and so he sought out and relied upon the ADA's advice and a neutral magistrate's finding of probable cause prior to arresting the plaintiff. The defendant could do no more to ensure the lawfulness of his conduct. This is so under the uncontroverted facts, even if in hindsight actual possession of the credit card was technically required.

Lastly, the only other act of the defendant faulted by the plaintiff (besides the arrest) is the bail recommendation. Pl.'s Compl., ¶ 22, p. 6 (docket no. 128). Again, the plaintiff identifies no falsity in the defendant's factual recitals in making the recommendation (which were further supported by criminal offender registry data), appearing to only take umbrage with the "25 year-old" age of the articles covering the plaintiff's past. Id. The articles (offered not for their truth, but for their affect on the defendant as the reader) are from the mid-to-late 1980's, but are not 25 years old. Ex. D. More importantly, regardless of the age of the articles, the plaintiff's

fraudulent criminal past, use of aliases and flight from a penitentiary were all clearly relevant to the plaintiff's risk of flight. See, U.S. v. Powell, 813 F.Supp. 903, 909-11 (D.Mass. 1992). The date of the data speaks to the weight, not the relevance. In any event, a $3,000.00 bail recommendation under the circumstances is patently reasonable. The defendant cannot be faulted for the judge's decision to go against his bail recommendation.

In sum, the defendant believes and believed that he was acting lawfully in seeking, obtaining and executing the arrest warrant, and making his bail recommendation, and that belief is objectively reasonable under the uncontested facts of the case. The defendant is thus immune from suit and liability under section 1983, and summary judgment is appropriate.

3. *Section 1983 Claim Not Sustainable On Abuse Of Process Theory*

An abuse of process claim cannot support a civil rights claim under chapter 42 section 1983, since the officer's subjective motivations, the critical element to an abuse of process claim, are irrelevant to a 1983 claim. Santiago v. Fenton, 891 F.2d 373, 388 (1st Cir. 1989). Thus, the plaintiff cannot sustain a section 1983 claim on this theory as a matter of law.

4. *Section 1983 Claim Not Sustainable On Malicious Prosecution Theory*

The higher courts in the First Circuit have not yet decided whether a claim for malicious prosecution states a claim under section 1983. Nieves v. McSweeney, 241 F.3d 46, 54 (1st Cir. 2001)(assuming without deciding that a claim for malicious prosecution can, under some circumstances, entail a violation of federally protected rights under the Fourth Amendment); Santiago, supra, 891 F.2d at 383. It is clear that such a malicious prosecution claim cannot be brought under the label of Fourteenth Amendment substantive due process rights, since there is no due process right to be free from prosecution. Albright v. Oliver, 510 U.S. 266, 271 (1994). However, the Court in Albright did not address the merits of a claim under the Fourth

Amendment, since Albright made no such claim.  Id. at 271.

In the wake of Albright, the Circuits that have decided the issue have split regarding whether a plaintiff can state a cause of action under section 1983 on a malicious prosecution theory in the name of the Fourth Amendment.  Castellano v. Fragozo, 352 F.3d 939, 949 (5th Cir. 2003)(surveying the varying approaches among the Circuits).  Some Circuits reject that such a claim can be stated, finding that the Fourth Amendment applies only to pre-trial detentions.  Id. at 949, 959.  Others have purported to allow such claims, but only upon proof of some "independent constitutional violation."  Id. at 949.

The reasoning is strong among the Circuits holding that malicious prosecution claims cannot be stated in terms of Fourth Amendment violations under section 1983.  Malicious prosecutions in the Commonwealth do not accrue until the underlying action is resolved in the subject's favor.  Wynne v. Rosen, 391 Mass. 797 (1984); see also Foley v. Polaroid Corporation, 400 Mass. 82 (1987).  The Fourth Amendment is applicable only to pre-trial restrictions on liberty, Castellano supra, 352 F.3d at 959, and is thus powerless to protect the subject beyond an arrest and detention.  Interests beyond that point are the proper province of state tort-law remedies for the tort malicious prosecution.  It is wholly unnecessary to muddy the waters by requiring a showing of an "independent federally protected right" to sustain a section 1983 claim on a malicious prosecution theory, when all we are really saying is that a malicious prosecution claim alone cannot sustain section 1983 liability.  The necessary corollary to that requirement is that malicious prosecution, absent the independent showing, does not state a claim under section 1983.  "[I]f a plaintiff can establish a violation of the fourth (or any other) amendment there is nothing but confusion to be gained by calling the legal theory 'malicious prosecution.'" Newsome v. McCabe, 256 F.3d 747, 751 (7th Cir. 2001).  "There is no such thing as a 1983

malicious prosecution claim." Id. (internal quotations omitted).

In the case at bar, to the extent that the plaintiff attempts to state a claim under section 1983 based upon a malicious prosecution theory, that claim must fail. The tort of malicious prosecution encompasses no constitutional violation.

   c. **The MCRA**

To prevail under the Massachusetts Civil Rights Act [hereinafter "MCRA"], "plaintiffs must prove that (1) their exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth, (2) have been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by 'threats, intimidation or coercion." MASS. GEN. LAWS. Ch. 12 §§ 11(h) & 11I; Swanset Dev. Corp. v. City of Taunton, 423 Mass. 390, 395 (1996). The MCRA is, in relevant part, "coextensive with 42 U.S.C. § 1983," Bell v. Mazza, 394 Mass. 176, 181 (1985) (internal citations and quotation omitted), except that "the derogation of secured rights must occur by threats, intimidation or coercion." Bally v. Northeastern Univ., 403 Mass. 713, 718 (1989) (internal citation omitted). The same standards of qualified immunity under section 1983 apply to a claim under the MCRA. Duca v. Martins, 941 F.Supp. 1281, 1294 (D.Mass. 1996)(quoting Duarte v. Healy, 405 Mass 43, 46, 537 N.E.2d 1230 (1989)). Hence, the plaintiff's MCRA claim fails for the same reason that his federal civil rights claim fails: 1) there is no evidence of a violation of protected rights; and 2) the defendant is entitled to qualified immunity. See, pp. 5-11, supra, §§ II.(b)(1) & (2).

   d. **The Underlying Torts**

Construing the plaintiff's operative pleading generously, he appears to claim several torts, each in support of his civil rights claims and for individual tort liability under state law. The undisputed facts reveal that the plaintiff cannot prove critical elements of each state-law tort

claim. As such, none of the plaintiff's claims can be sustained, whether directly as torts or as support for civil rights liability.

1. *False Arrest & Imprisonment*

The elements of a false arrest claim are that "(1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the defendant had no privilege to cause the confinement." Calero-Colon v. Betancourt-Lebron, 68 F.3d 1, 3, n. 6 (1st Cir. 1995). Where the original arrest is found to be illegal, the subsequent imprisonment is also illegal, and constitutes a continuing tort for which the defendant is responsible. Wax v. McGrath, 255 Mass. 340, 151 N.E. 317 (1926).

It is a long-standing principle of jurisprudence in the Commonwealth that an officer executing a valid arrest warrant is *presumptively* acting upon legal authority, and cannot be held liable for false imprisonment. Coupal v. Ward, 106 Mass. 289, 1871 WL 8529, at *2 (1871). Such an officer is privileged to make such an arrest, and indeed is commanded to do so by the issuing court as an officer of the law. Therefore, liability cannot lie for false arrest or imprisonment absent a challenge to the warrant. Id. As with any presumption, the burden of rebuttal is upon a litigant challenging that presumption of lawful authority, which here, is the plaintiff.

In the present case, there is no dispute: 1) that the plaintiff was detained; 2) that the plaintiff was conscious of said detention; and 3) we may safely presume that it was against his will. The detention was, however, presumptively privileged, having been pursuant to a valid arrest warrant, and the plaintiff has failed to rebut that presumption, or challenge the warrant at all.

Moreover, the undisputed facts reveal that the plaintiff could not sustain a challenge if he

14

ventured to.  The warrant was issued by a neutral and detached magistrate and was based upon articulable facts showing probable cause that the plaintiff had committed the given felonies.  Aff. of Def., ¶¶ 8-21, Ex. B; Warrant Application, Ex. C; Warrant, Ex. E.  This satisfies the Massachusetts Declaration of Rights and the Fourth Amendment of the United States Constitution.  As to jurisdiction, both the Town of Acushnet (where the alleged offenses occurred) and the New Bedford District Court (where the warrant issued) are in Bristol County.  Aff. of Def., ¶ 31, Ex. B.  (As a geographical matter, the defendant also respectfully requests that the Court take judicial notice of that fact.)  The Clerk Magistrate of New Bedford District Court therefore had jurisdiction and authority to issue the warrant.  MASS. GEN. LAWS ch. 218 §§ 33 & 35 (respectively authorizing: 1) clerk magistrate's to issue arrest warrants; 2) out of the district courts for offenses occurring within their County).  The arrest and detention were thus privileged as a matter of law.  Therefore, summary judgment must be granted in favor of the defendant on the false arrest and imprisonment claim.

   2.  *Civil Conspiracy*

In Massachusetts, there are two forms of civil conspiracy.  Kurker v. Hill, 44 Mass.App.Ct. 184 (1998); Aetna Casualty Surety Co. v. P & B Autobody, 43 F.3d 1546, 1563-64 (1st Cir., 1994).  First, there is a limited form of conspiracy recognized as an independent tort, which is grounded in a theory of coercion.  "In order to [sustain] a claim of [this type of] civil conspiracy, plaintiff must allege [and prove] that defendants, acting in unison, had some peculiar power of coercion over plaintiff that they would not have had if they had been acting independently."  Id. (internal quotations omitted)(citing Fleming v. Dane, 304 Mass. 46 (1939)).  The theory anticipates unlawful methods or results, and as an independent tort, requires proof of damages.  See, Kurker v. Hill, 44 Mass.App.Ct. 184 (1998).

The second type is not recognized as an independent tort, but is more akin to a theory of common law joint liability or vicarious liability for the tort of another, and is often used in the context of multiple parties agreeing to commit a tort against a third party. Aetna, supra, 43 F.3 at 1564. Coercion is not an element. Id. Claiming conspiracy in this context does not change the nature of the underlying tort alleged, nor does it add to its legal force. Id. (citing Phelan v. Atlantic National Bank, 301 Mass. 463, 467 (1938). This version of civil conspiracy requires proof of: 1) a common design or agreement, although not necessarily express, between two or more persons, to do a wrongful act; and 2) some tortuous act in furtherance of that agreement. Aetna, supra, 43 F.3 at 1564 (quoting RESTATEMENT (SECOND) OF TORTS, § 876 (1977)).

The plaintiff alleges a conspiracy to, "remove him from the community as a free man." Pl.'s Second Am. Compl., p. 1, "Preliminary Statement." The plaintiff mentions coercion, but seems to do so in the context of a violation of the MCRA. Id. The plaintiff is, at best, claiming the second type of civil conspiracy. However, the defendant will undertake a comprehensive approach in this *pro se* case, and address both types.

To the extent that the plaintiff alleges the first, coercive type of conspiracy, there is simply no allegation or evidence that the defendant acted in concert with anyone to do anything that the defendant could not have done on his own. It is true that the defendant spoke with ADA Markey, and sought out and obtained an arrest warrant before arresting the plaintiff. Aff. of Def., Ex. B, ¶¶ 20-21; Warrant Application, Ex. C; Warrant, Ex. E. However, under Massachusetts law the defendant could have accomplished his *alleged* objective to falsely arrest and imprison the plaintiff independently, i.e., by arresting him without a warrant on the defendant's own finding of probable cause that the plaintiff had committed the given felonies in question. White v. Marblehead, 989 F.Supp. 345, 349 (D.Mass., 1997)(approving of warrantless

arrests where probable cause exists to reasonably believe a felony has been committed or is being committed). Thus any purported agreement (for which there is no evidence), collaboration or concerted effort with ADA Markey and/or the Clerk Magistrate to wrongfully arrest the plaintiff would not strengthen the defendant's power to achieve the alleged result. This is an essential element to the tort of civil conspiracy of the coercive type. Aetna Casualty, supra, 43 F.3d at 1563-64.

As noted, the plaintiff is more likely attempting to claim the second type of conspiracy, i.e., an agreement with the ADA and others to commit the torts of false arrest and imprisonment, abuse of process and malicious prosecution. Pl.'s Compl., Preliminary Statement, p. 1. The plaintiff has come forward with no evidence of an agreement between the defendant and any person to support his conclusory allegations. There is also no evidence that they took any steps towards the commission of those torts, since the arrest, confinement and bail recommendation was not extra-legal. Certainly we must require more than frenzied, unsupported conclusions before bringing an officer of the law, an assistant district attorney and a clerk magistrate to trial for civil conspiracy. Absent evidence of an agreement and acts in furtherance of the torts, the claims fail, and summary judgment must enter in favor of the defendant.

3.  *Abuse of Process*

In order to sustain the tort of abuse of process, a plaintiff must prove: 1) that process was used; 2) for an ulterior or illegitimate purpose; and 3) damages. Gutierrez v. Massachusetts Bay Transportation Authority, 437 Mass. 396, 407 (2002).

There is no dispute that legal process was used in the arrest of the plaintiff. However, the evidence in this case reveals absolutely no evidence to support a theory that the defendant had an ulterior motive or purpose for his actions. The record demonstrates the defendant's careful

execution of his sworn duties upon receipt of a complaint by a third-party citizen. Without evidence of an ulterior motive, no liability for abuse of process lies. Therefore, the plaintiff has no reasonable expectation of demonstrating critical elements of an abuse of process claim, and the claim must fail.

4. *Malicious Prosecution*

In actions for malicious prosecution, the plaintiff bears the burden of pleading and proving (1) that a prosecution was commenced against him, (2) that it was instituted or instigated by the defendant, (3) that it was malicious, (4) that it has been legally and finally terminated in the plaintiff's favor, (5) that it was without probable cause, and (6) that it caused the plaintiff damage. Wynne v. Rosen, 391 Mass. 797 (1984); see also Foley v. Polaroid Corporation, 400 Mass. 82 (1987). Malice is simply the doing of an unlawful or wrongful act, knowing it was unlawful and wrongful. See, NOLAN & SARTORIO, 37 M.P.S., Torts, § 78, p. 95 (2d ed.1989 and 1993 Supp.) The burden of showing a lack of probable cause lies with the plaintiff, but circumstances suggesting the existence of probable cause preclude a claim for malicious prosecution. Gutierrez, supra, 437 Mass. at 405-06.

For the purpose of this motion, there is no dispute that the criminal proceedings were brought and terminated in the plaintiff's favor. However, with what seems to be a recurring pattern with the plaintiff's claims, interpreting the Complaint generously for the plaintiff, we have at best only bare, harried conclusions that the defendant acted without probable cause and with malice. There is not an iota of evidence to support that the defendant acted unlawfully or wrongfully knowing that his actions were illegal or wrongful. Similarly, as noted above, there is no evidence that the defendant lacked probable cause. Indeed, there is an abundance of evidence on the undisputed record supporting that the defendant acted in good faith and with probable

cause. Supra, § II.b., pp. 8-9. In any event, the burden is the plaintiff's to show that the defendant acted without probable cause and with malice, and there is no genuine dispute of material fact that he cannot meet that burden on this record. Thus the malicious prosecution claim fails, whether asserted as a tort directly against the defendant or in support of a theory of civil rights liability, and summary judgment is appropriate.

### III.   CONCLUSION

Civil rights laws, and the judicial system in general, are not intended to be used as a sword to be used against officers of the law in vengeful retaliation for the lawful execution of their duties. The plaintiff has launched a flurry of claims against over a dozen defendants, and all have been found to be entirely without merit. The undisputed record in this case reveals that the claims against the defendant are more of the same.

Summary judgment is appropriate in this case because there are no genuine issues of material fact, and the defendant is entitled to judgment as a matter of law. Specifically, the civil rights claims cannot be sustained because no legally sustainable violation of a protected right has been shown, and because the defendant is entitled to qualified immunity. The individual torts cannot be sustained under the laws of the Commonwealth, nor can they sustain civil rights violations, because the uncontroverted evidence reveals that the plaintiff has no evidence to prove critical elements of those claims. As such, summary judgment in favor of the defendant as to all claims is appropriate.

The Defendant,
SERGEANT CHRISTOPHER RICHMOND,
By his attorneys,
PIERCE, DAVIS & PERRITANO, LLP

Michael D. Leedberg, BBO #660832
John J. Davis, BBO #115890

Ten Winthrop Square
Boston, MA 02110
(617) 350-0950

Dated: 7/20/06

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the above document was served upon the *pro se* plaintiff, Alex Feinman, by first class mail on July 20, 2006, to his address of record of 1267 Main St., Acushnet, MA, and also to P.O. Box 30061, Acushnet, MA (a new mailing address provided by the plaintiff during a Rule 7.1 conference on June 19, 2006). The plaintiff does not appear to be a registered Pacer user.

_____
Michael D. Leedberg