UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 03-12301-GAO

```
_____
                                )
ALEX FEINMAN,                   )
      Plaintiff                 )
                                )
v.                              )
                                )
DETECTIVE CHRISTOPHER           )
RICHMOND, Acushnet Police       )
Dept.                           )
      Defendant                 )
_____)
```

**SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT, CHRISTOPHER RICHMOND'S MOTION FOR SUMMARY JUDGMENT**

**I.   PERTINENT BACKGROUND**

This is an action which arises out of the October 26, 2003 arrest of the pro se plaintiff, Alex Feinman [hereinafter "plaintiff"], by the defendant, then-Detective (now Sergeant) Christopher Richmond [hereinafter "defendant"] of the Acushnet Police Department on charges of fraud and improper use of a credit card in violation of M.G.L. c. 266, § 37C, and larceny by false pretenses in violation of M.G.L. c. 266, § 30.

The undisputed record reveals that on October 26, 2003, at 7:17 P.M., while on routine patrol, the defendant spotted the plaintiff walking his dog on a public street in Acushnet, Massachusetts. Aff. of Def., ¶ 22, Ex. B; Arrest Narrative & Summons Report, Ex. F (as attached to original Motion for Summary Judgment); Pl.'s Am. Compl., p. 8, ¶ 20 (docket no.

103). Having first-hand knowledge of the existing warrant for the plaintiff's arrest, the defendant executed the arrest warrant by arresting the plaintiff. Aff. of Def., ¶ 22, Ex. B; Arrest Narrative & Summons Report, Ex. F. The plaintiff was compliant and cooperative at all times during the arrest, and the defendant was not required to use any force. Supp. Aff. of Def., p. 2, ¶ 10.

Prior to transporting the plaintiff to the police station, the defendant accompanied the plaintiff to his home so that he could secure his dog, speak with his wife and call a lawyer, all of which the plaintiff did. Aff. of Def., ¶ 22, Ex. B; Arrest Narrative & Summons Report, Ex. F; Pl.'s Am. Compl., p. 8, ¶ 20 (docket no. 103). The plaintiff alleges that he requested to bring "methadone"[1] with him when he was arrested, which was reportedly prescribed for hip pain, and further claims that the defendant refused that request. Pl.'s Am. Compl., p. 12, ¶ 31. At 7:34 PM, the defendant began transport of the defendant to the Acushnet Police Department. Supp. Aff. of Def., p. 2, ¶ 7. The defendant placed the plaintiff into the front seat of the cruiser after the plaintiff indicated that he had a medical condition involving his hip, since the front seat was more comfortable, more stable and easier to enter and alight from. Supp. Aff. of Def., p. 1, ¶ 6; Ex. F (attached to original Motion).

The Acushnet Police Department is located at 130 Main Street, Acushnet, Massachusetts, and is a six minute ride by automobile from the plaintiff's residence, which at the time was located at 1267 Main Street, Acushnet, Massachusetts. Supp. Aff. of Def., p. 2, ¶ 7; Call Sheet, Ex. I. The parties arrived at the Acushnet Police Department at 7:40 PM. Supp. Aff. of Def., p.

---

[1] "Methadone Hydrochloride" is defined as a synthetic opiod analgesic used primarily to treat pain and addiction to narcotic pain relievers. Taber's Cyclopedic Medical Dictionary, 19th Ed., p. 1343 (F.A. DAVIS, 2001).

2, ¶ 7; Ex. I. Once at the station, the plaintiff was processed over an approximate 41 minute period, and at 8:21 PM, the plaintiff was then transported less than 12 miles to the Ash Street Regional Lockup, 108 Court Street, New Bedford, Massachusetts by another Acushnet officer, once again using the front seat to accommodate the plaintiff's reported hip problem. Supp. Aff. of Def., p. 2, ¶ 8; Ex. F; Call Sheet, Ex. I. The plaintiff was handed over to the custody of the Bristol County Sheriff's Department at 8:37 PM, just one hour and twenty minutes after he was spotted walking his dog. Supp. Aff. of Def., p. 2, ¶ 9, Call Sheet, Ex. I.

The plaintiff's Amended Complaint suggests that the plaintiff alleges, *inter alia*, that the defendant violated his rights under the ADA by refusing to allow him to bring his prescription medications with him when he was arrested. Pl.'s Am. Compl., p. 12, ¶ 31. Having previously moved for summary judgment on the plaintiff's other theories of recovery on July 20, 2006, with the Court's permission of August 8, 2006, the defendant now supplements the prior filings and moves for summary judgment on the plaintiff's last theory of recovery – an alleged ADA violation.[2]

## II.   ARGUMENT

### a.   Americans with Disabilities Act

In order to sustain a claim under Title II of the Americans with Disabilities Act, a plaintiff must demonstrate:  1)  that he is a qualified individual with a disability;  2)  he was either excluded from participation in or denied the benefits of a "public entity's" services,

---

[2] Although the defendant's Motion for Permission to file these supplemental materials references an assault and battery count, p. 2, docket no. 154, the Amended Complaint is unclear in this regard, and during a telephone conference on August 10, 2006 the plaintiff clarified that he is not alleging assault and battery against this defendant.

programs or activities, or was otherwise discriminated against by a "public entity;" and 3) such exclusion, denial of benefits, or discrimination was "by reason of" his disability. 42 U.S.C. § 12132; Kiman v. New Hampshire Department of Corrections, 451 F.3d 274, 283 (1st Cir., 2006). While medical care is a "service" covered under the umbrella of the ADA, the denial of medical care is only actionable to the extent that the plaintiff demonstrates that the care was denied under some larger theory of disability discrimination. Kiman, 451 F.3d at 284. "The ADA does not create a remedy for malpractice." Id.

A duty to reasonably accommodate a disabled person generally only arises under the ADA when requested, although a duty can arise where the need is obvious. Reed v. LaPage Bakeries, Inc., 244 F.3d 254, 260-61 (1st Cir., 2001)(holding so in the employer-employee context).

    i.    The Defendant Is Not A "Public Entity"

The plaintiff's suit is against the defendant individually. Pl.'s Am. Compl., p. 1 (docket no. 103).[3] The ADA authorizes suits against "entities" only, and therefore, the plaintiff's claim fails as a matter of law. 42 U.S.C. § 12132.

A "public entity" is defined in pertinent part as, "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; ...." 42 U.S.C. § 12131(1); 28 C.F.R. 35.104. Many courts that have

---

[3] To the extent that the Court disagrees, and the plaintiff's claim is viewed as being against the Acushnet Police Department, then the plaintiff's civil rights claims fail on this ground as well. He has not alleged or brought forward evidence regarding the requisite "policy or custom" for which civil rights liability against a public employer can attach under section 1983 or the MCRA. Hafer v. Melo, 502 U.S. 21, 24-27 (1991); Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 694 (1978); Kelly v. LaForce, 283 F.3d 1, 11 (1st Cir., 2002)(applying Monell "policies and customs" standard to MCRA claim).

addressed the issue have held that the ADA does not permit claims against persons in their individual capacities. See, Crocker v. Lewiston Police Department, 2001 WL 114977, docket no. 00-13-PC, at *5 (D. Maine, Feb. 9, 2001)(not specifically holding so, but noting that a majority of courts addressing the issue have so held, and citing to Alsbrook v. City of Maumelle, 184 F.3d 999, 1005, n. 8 (8th Cir. 1999); Hiler v. Brown, 177 F.3d 542, 546-47 (6th Cir. 1999) (Rehabilitation Act); Hallett v. New York State Department of Correctional Services., 109 F. Supp. 2d 190, 199 (S.D.N.Y. 2000); Montez v. Romer, 32 F. Supp. 2d 1235, 1240-41 (D. Colo. 1999)). These cases are well-reasoned. The plaintiff's claims that the ADA encompasses individuals as "public entities" defies the plain and commonly understood definition of "entity." If Congress wanted Title II of the ADA to apply to "persons", they knew how to say so. 42 U.S.C. § 12203(a) (prohibiting any "person" from retaliating against a person seeking redress under the ADA).

    ii.    The Plaintiff Has Failed To Demonstrate That He is a Qualified Individual

The plaintiff must demonstrate that he is a "qualified individual" with a disability. Id. at 283; 42 U.S.C. § 12102(2)(A); 29 C.F.R. § 1630.2(g). This requires proof of a disability that "substantially limits" one of the plaintiff's "major life activities," such as caring for himself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working. 29 C.F.R. § 1630.2(i). A person is "substantially limited" if he is unable to perform, or significantly limited from performing, a major life activity. 29 C.F.R. §§ 1630.2(j)(i)-(ii). The duration of the condition is also a factor. Id. at §1 1630.2(j)(2)(ii). Some Circuits have held this to mean that afflictions of limited duration are not considered disabilities under the ADA.

McDonald v. Com. of Pa., Dept. of Public Welfare, Polk Center, 62 F.3d 92, 96 (3rd Cir., 1995)(two month incapacitation after surgery not a "disability"); Vande Zande v. State of Wisconsin Dept. of Administration, 44 F.3d 538, 544 (7th Cir., 1995); de la Torres v. Bolger, 781 F.2d 1134, 1137 (5th Cir. 1986). The Court may also consider whether the condition is medically controlled, i.e., with medication, prosthetics, etc., as a mitigating factor when determining if a person is a qualified individual under the ADA. Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 565-66 (1999); Sutton v. United Airlines, 527 U.S. 471, 482-83 (1999)

The plaintiff alleges he had a hip condition at the time of his arrest, having just had hip surgery, and that he was being prescribed Methadone from a physician to control the pain. Pl.'s Am. Compl., p. 12, ¶ 31 (docket no. 103); Report & Recommendation, p. 17 (docket no. 136). The plaintiff has failed to come forward with any allegations or evidence that this condition was anything more than temporary, or that he was "substantially limited" from a "major life activity" by his condition. Indeed, the plaintiff's own allegations suggest that he was actively involved in business, that his condition was medically controlled, and his allegations and the undisputed facts reveal that he was walking his dog at the time of his arrest. Pl.'s Am. Compl., pp. 8, 15-17, ¶¶ 20, 35-38; Aff. of Def., ¶ 22, Ex. B; Arrest Narrative & Summons Report, Ex. F. The defendant respectfully asks the Court to take judicial notice that the plaintiff walked into and out of a July 18, 2006 hearing on this matter before the Court on his own accord, without any significant difficulty. This strongly supports that the condition was temporary, and that he has achieved a full enough recovery that he is no longer substantially limited from walking. This record falls well short of, indeed is void of any allegation or supporting evidence, to meet the

plaintiff's burden of demonstrating that he was or is "substantially limited" for any significant duration from a major life activity by his hip condition.

    iii.    The Plaintiff Has Failed to Show That He Was Denied the Benefit of Medical Services

Even assuming, *arguendo*, that the plaintiff requested and was denied permission to bring his pain medications to jail with him, the undisputed record supports that this did not amount to a denial of the benefit of medical services by the defendant. The plaintiff does not allege or even attempt to prove that he requested and/or was denied medical care, or needed pain medication during the 80 minute period that he was in the custody of the Acushnet Police. There is a vast difference between the plaintiff not being allowed to take his medication with him (as alleged), and actually needing it (not alleged). There is no claim or proof of the latter; at least not during the 80 minutes that he was in the defendant's custody.

This is not a case where the plaintiff was denied entrance into an early-release boot camp because of a medical condition. Pennsylvania Dept. of Correction v. Yeskey, 524 U.S. 206 (1998). It is not a case where the defendant is confined to a wheelchair, and was left in a small cell at Acushnet for 23-to-24 hours per day, sometimes sitting in his own feces, in a space too small to turn around. U.S. v. Georgia, 126 S.Ct. 877, 879 (2006). It is a case where the plaintiff claims that he was not allowed to bring prescription pain medication with him to the Acushnet Police Department while in their custody for 80 minutes; pain medications which he has not claimed he needed at any time during his short stay in Acushnet, and pain medications which the Court has already held that he had no ADA-based right to possess during his subsequent three-day stay in the Ash Street Facility. Report & Recommendations, pp. 17-18 (docket no. 136);

Order, Apr. 6, 2006. The claim is frivolous at its best and spurious at its worst.

The only accommodation the plaintiff allegedly requested - to take prescription pain medications with him to jail - would place the health and safety of the plaintiff and other prisoners at risk. No other accommodations were requested or reasonably apparent under the uncontroverted facts. The plaintiff was out walking his dog when arrested, was allowed to go to his house prior to be taken in, and was in the custody of the Bristol County Sheriff's Office one hour and twenty minutes after being arrested. It is the law of the case that once in their custody, the Bristol County Sheriff's Office did all they were required to do under the ADA during the plaintiff's approximate three days in their custody. Id. The claim is not that the plaintiff was denied medical care – the claim is that he was not allowed to bring his medication with him to jail. There is no genuine dispute that the plaintiff was allowed access to medical care when he requested such access and that medical care was always available to him at Acushnet if he needed it. Supp. Aff. of Def., p. 2, ¶¶ 13, 16. As such, this claim must fail on these undisputed facts.

    iv.   The Accommodation Requested Was Unreasonable, and the Plaintiff Was Reasonably Accommodated

A public entity generally has no duty to reasonably accommodate a disability until requested, unless the need is obvious. Reed v. LaPage Bakeries, Inc., 244 F.3d 254, 260-61 (1st Cir., 2001)(holding so in the employer-employee relationship). It necessarily follows that a public entity has no duty to implement *unreasonable* accommodations. Id. A public entity also has no obligation to implement reasonable accommodations that "fundamentally alter" the nature of the program in question. Kiman, supra, 451 F.3d at 283; 42 U.S.C. § 12182(b)(2)(A)(ii); 28

C.F.R. 35.130(b)(7).

In the case at bar, the plaintiff advised the defendant that he had a hip condition, and the plaintiff also claims that he requested to take his medications with him to jail.[4] Under the uncontroverted facts, the plaintiff requested no other accommodations, and none were obvious. Supp. Aff. of Def., p. 2, ¶13, Ex. H. The alleged request to take powerful pain medications with him into the jail is unreasonable for obvious reasons, and this was an accommodation that the defendant was not required to make in the name of the ADA. First and foremost, prisoners are often distraught and irrational, and the risk of suicide is high. Supp. Aff. of Def., p. 2, ¶ 12. It is for this reason, under Acushnet Police Department policies, prisoners are stripped of their belts, shoelaces and any other potential objects of harm. Supp. Aff. of Def., p. 2, ¶ 11. A bottle of powerful prescription drugs is much more dangerous than a shoelace, and to require police departments to allow such items into their jails would fundamentally alter the nature of their health and safety programs and procedures. Medical care was available at the Acushnet Police Department had the plaintiff requested it. Supp. Aff. of Def., p. 2, ¶¶ 13, 16.

Moreover, the defendant did accommodate the plaintiff by allowing him to sit in the more comfortable, secure and accessible front seat of the police cruiser, while all arrestees are traditionally secured in the rear of the cruisers. Supp. Aff. of Def., p. 1, ¶ 6. The plaintiff was carefully assisted into the cruiser as well. Supp. Aff. of Def., p. 1, ¶ 5. The undisputed facts support that the plaintiff's known disability was reasonably accommodated to the extent necessary and possible.

---

[4] The defendant denies that the plaintiff requested his medications, but concedes that this poses a question of fact, and proceeds as though the plaintiff's claim is true only for the purpose of this motion.

     v.     <u>The Plaintiff Has Failed to Show That He Was Discriminated Against "By Reason of" His Alleged Disability</u>

As noted, in order to sustain a claim under the ADA, it is not enough for the plaintiff to show that he had a medical condition and was denied treatment by the defendant. <u>Kiman</u>, 451 F.3d at 284 (1st Cir., 2006). It was the express purpose of Congress when passing the ADA to address **discrimination** of individuals on the basis of their disability. 42 U.S.C. §§ 12101, *et seq*. As such, courts in this circuit have recognized that the refusal to provide medical care alone is not actionable under the ADA. <u>Kiman</u> at 284. The plaintiff must plead and prove that his denial of medical care occurred under some larger theory of discrimination. <u>Id</u>. The ADA is not a medical malpractice statute. <u>Id.</u>

In this case, the record is void of allegations or proof that the defendant treated the plaintiff differently "by reason of" his disability. The allegations and offers of proof are, at best, that the plaintiff had a medical condition, for which the defendant refused to allow him to take medications to jail. There is no claim or proof offered that the plaintiff was treated differently than others similarly situated; indeed, no comparison group is even identified. There is no claim or proof that the defendant denied the plaintiff his medications because of animus, fear or an apathetic attitude towards persons with orthopedic or hip problems. To the contrary, the undisputed circumstances provide solid support that the defendant's motivation was to serve the strong interests behind the Acushnet Police Department's policies and procedures for prisoner safety. <u>Supp. Aff. of Def.</u>, p. 2, ¶ 11. The claim simply does not belong under the auspices of the ADA.

The defendant is mindful of the United States Supreme Court's expansive definition of

what constitutes "discrimination" for the purpose of the ADA. <u>Olmstead v. Zimring</u>, 527 U.S. 581, 597-98 (1999)(holding that unjustifiably "isolating" two mentally impaired individuals in a segregated environment when they qualified for treatment in a community-based program constituted discrimination, despite the lack of evidence of a comparison group or differential/disparate treatment). However, <u>Olmstead</u> is distinguishable. In <u>Olmstead</u>, the plaintiffs were isolated and segregated "by reason of" their mental disability, and this was a major factor in the Court's decision. <u>Id.</u> at 599. Reasonable minds can differ as to whether isolation or segregation alone, without evidence of disparate treatment, constitutes discrimination. <u>See, id.</u> at 615-26 (Thomas, J., dissenting). However, isolation and segregation *was* an express concern of Congress when drafting the ADA. 42 U.S.C. §§ 12101, *et seq.*

By contrast, this case involves no disparate treatment, no isolation and no segregation of the plaintiff on account of his disability. This case implicates no animus, fear or apathy towards persons with orthopedic conditions. This case supplies no fodder for an argument that the defendant's alleged refusal to allow the plaintiff take his medications with him to jail was mere pretext for a hidden agenda against persons with hip conditions; indeed, the rationale behind the policy is compelling. The plaintiff, in essence, asks for a standard of medical care for arresting officers, and the ADA is powerless to help.

vi.   <u>The ADA Cannot Be Constitutionally Applied To Defeat Local Jailhouse Policies</u>

The Supreme Court has expressly left open the question of whether Congress has the power, through either the Fourteenth Amendment or the Commerce Clause, to regulate traditionally local issues such as prison management and health and safety vis-à-vis the ADA. <u>Pennsylvania Department of Corrections v. Yeskey</u>, 524 U.S. 206, 212-13 (1998).

The federal government is one of enumerated powers. City of Boerne v. Flores, 521 U.S. 507, 516 (1997)(citing M'Culloch v. Maryland, 4 Wheat. 316, 405, 4 L.Ed. 579 (1819), and the Federalist, No. 45, p. 92). Health and safety has primarily and traditionally been a local concern, and as such, and state governments have traditionally been given great leeway in regulating these matters. Medtronic, Inc. v. Lohr, 518 U.S. 470, 475 (1996). The Constitution does not grant the federal government the express authority to govern these issues of local concern. The defendant asserts that as applied in the context presented, the ADA is an unconstitutional infringement by the federal government upon the rights of local governments, and in direct conflict with the ideals of federalism upon which the Constitution was founded.

As the Supreme Court has recently found, section 5 of the Fourteenth Amendment to the United States Constitution expressly grants Congress the power to abrogate a state's sovereign immunity in the name of enforcing due process rights, to the extent that an actual violation of the Fourteenth Amendment can be shown. U.S. v. Georgia, 126 S.Ct. 877, 881-82 (2006). In Georgia, the prisoner brought an action under the ADA for violations of the prisoner's Eight Amendment right against cruel and unusual punishment, and the Eighth Amendment is in turn encompassed by the Due Process Clause of the Fourteenth Amendment. Id. at 881. As such, the Court held that since the prisoner was alleging an actual violation of the Due Process Clause, Congress had the express authority to abrogate the State's sovereign immunity and enforce the prisoner's rights under section 5 of the Fourteenth Amendment vis-à-vis the ADA claim. Id.[5]

In contrast, the plaintiff in this case brings no Due Process claim related to his treatment

---

[5] That section expressly gives Congress the power to enforce the provisions of the Fourteenth Amendment through appropriate legislation. U.S. CONST. AM. XIV § 5.

during his pretrial detention.  The plaintiff alleges that he was deprived of his liberty without probable cause, presumably in violation of his Fourth Amendment right against seizure of his person without probable cause.  As previously briefed, that claim is utterly unsupported on the undisputed facts.  <u>Defs.' Memorandum in Support of Motion for Summary Judgment</u>, § II(b)(6), pp. 6-9 (docket no. 147).[6]  But perhaps more importantly, the Fourth Amendment claim also has absolutely nothing to do with the ADA claim addressing the alleged denial of his alleged request to bring his medication with him to jail.  Being arrested without probable cause does not bring rise to an ADA claim.  The claims are separate and distinct, and the Fourth Amendment claim cannot provide the requisite justification for Congressional action through the ADA in this context.  Congress cannot, through the ADA, tell the Acushnet Police Department how to handle the medical needs of pre-trial detainees unless a Due Process claim is raised relative to those medical needs.  Absent the enforcement authority of section 5 of the Due Process Clause, Congress is powerless to regulate such matters.  Since no relevant Due Process claims is made herein, summary judgment is therefore appropriate.

Congress also finds no power to regulate the Acushnet Police Department in the Commerce Clause.  The Commerce Clause authorizes federal regulation of matters that substantially affect interstate commerce.  U.S. CONST., Art. I, § 3, cl. 8;  <u>United States v. Lopez</u>, 514 U.S. 549, 559 (1995).  There is simply no nexus, either directly or as a cumulative whole, between interstate commerce and a local government's treatment of pre-trial detainees, such that Congressional regulation through the Commerce Clause is proper.  To hold otherwise is to

---

[6] To the extent an Eighth Amendment claim is attempted, Eighth Amendment rights only attach post-conviction, and do not apply to pretrial detainees.  <u>Bell v. Wolfish</u>, 441 U.S. 520, 537, n. 16 (1979).

extend Congressional power under the Commerce Clause to the point of no return. Lopez, 514 U.S. at 600 (Thomas, J., concurring). Therefore, the ADA, as the plaintiff would have the Court apply it, is an unconstitutional usurpation of local rights by the federal government.

The facts of this case provide an excellent example of why the Constitution leaves the regulation of local concerns to the States. As applied to this case, the ADA would force the defendant to choose between civil liability under the ADA or allowing the plaintiff to take powerful prescription medications with him into his jail cell, perhaps allowing him to abuse them, distribute them to other inmates, or worse yet, commit suicide with them. Acushnet chooses to address the medical needs on a case-by-case basis, and is in the best position to govern the health and well-being of its residents and its pre-trial detainees. With the Town of Acushnet Ambulance a mile and one half away, they seem to be using this discretion wisely. Supp. Aff. of Def., p. 2, ¶¶ 13, 16. Moreover, State remedies are available to pre-trial detainees in the Commonwealth of Massachusetts, and indeed, the Massachusetts Declaration of Rights at times offers greater due process protections than those afforded by the United States Constitution. Christensen v. Kingston School Committee, 360 F.Supp.2d 212, 215, n. 1 (D.Mass., 2005)(Young, C.J.). Congress not only lacks the posture to properly regulate these matters - it lacks the power. Therefore, the ADA cannot be applied under the undisputed circumstances presented, and summary judgment is appropriate.

III.   **CONCLUSION**

Fore the aforementioned reasons, there is no genuine dispute of material facts, and the plaintiff's ADA claim cannot stand as a matter of law. Therefore, summary judgment is appropriate.

The Defendant,
SERGEANT CHRISTOPHER RICHMOND,
By his attorneys,
PIERCE, DAVIS & PERRITANO, LLP

/s/ Michael D. Leedberg

Michael D. Leedberg, BBO #660832
John J. Davis, BBO #115890
Ten Winthrop Square
Boston, MA 02110
(617) 350-0950

Dated: August 17, 2006

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the above document was served upon the *pro se* plaintiff, Alex Feinman, by first class mail on August 17, 2006, to P.O. Box 30061, Acushnet, MA. The plaintiff does not appear to be a registered Pacer user.

/s/ Michael D. Leedberg

Michael D. Leedberg

15